**In re David M. REED, Debtor.**

**Martha REED, Plaintiff,**

v.

**David M. REED, Defendant.**

**Bankruptcy No. 205–5–82–00435.
Adv. No. 205–5–82–0217.**

United States Bankruptcy Court,
D. Connecticut.

July 6, 1983.

Roberta S. Kuriloff, New Haven, Conn., for plaintiff.

John J. Coughlin, Coughlin, Creane, Malone & Milne, Milford, Conn., for defendant.

## MEMORANDUM AND ORDER ON COLLATERAL ESTOPPEL

ALAN H.W. SHIFF, Bankruptcy Judge.

### I.

On April 22, 1982, the defendant filed a voluntary petition under Chapter 7 of the Bankruptcy Code. Thereafter, the plaintiff instituted the above entitled adversary proceeding to determine the nondischargeability of certain debts owed to her by the defendant pursuant to a dissolution judgment entered by the Connecticut Superior Court on January 23, 1982.[1] The state court judgment provided, *inter alia,* that the marriage be dissolved; that the plaintiff herein receive the marital home; that she additionally receive $1.00 a year alimony; that the defendant herein pay one-half

1. *David M. Reed v. Martha W. Reed,* Superior Court for the Judicial District of Ansonia-Milford, No. FA81 0007963S.

2. Plaintiff's "Motion For Finding Of Collateral Estoppel".

3. An attachment to plaintiff's "Memorandum Re: Issues Collaterally Estopped From Being Reargued and Relitigated" lists the following:
 [1] Married 7/23/60
 [2] 3 Minors
 [3] Marriage broken down irretrievably
 [4] Reasons: "Evidence clearly points to plaintiff-husband as the partner principally responsible for the marital breakdown."
 [5] At time of divorce, Mrs. Reed had custody of children
 [6] *Business of Parties:* Parties started retail store business known as the Canvas Patch in 5/77
 [7] 6/80, Canvas Loft, opened by husband
 [8] Wife self-employed and operates Canvas Patch
 [9] She draws approx. $100 wk.
 [10] She has business inventory of $10,000
 [11] She has accts. payable of $9,211.00 and inventory loan of $15,000

of the balance due on the second mortgage on the home; and that he hold her harmless from various obligations. The plaintiff now moves ". . . that the defendant be collaterally estopped from relitigating or rearguing any issues already litigated in the state court dissolution of marriage action, which issues are the basis of the state court findings of fact in its Memorandum Of Decision . . ."[2]

On February 18, 1982, the state court entered a "Corrected Memorandum Of Decision." The memorandum defined the issue before the state court as follows:

"At issue are questions, inter alia, of alimony and support; a claim for a disposition or assignment of the joint property of the parties located at No. 3 Harborview Avenue, Milford, Connecticut and a determination of the respective liabilities each to the other of obligations which, as to third parties are the joint liabilities of the parties."

The memorandum then described the various resources and debts of the parties. In large part, the plaintiff points to that memorandum for 28 "findings of fact" as to which she seeks to apply the doctrine of collateral estoppel.[3]

[12] Prior to entering this business she had no significant work history
[13] In 1977, at time of opening of retail store, the business took out a loan for inventory and opening costs of approx. $17,300
[14] When Mr. Reed started Canvas Loft (his business) he borrowed $14,700, which added to previous business loan made a total debt of $32,000 which is secured by a second mortgage on his home.
[15] In 6/81 he again borrowed $17,300.00 for operating capital for the Canvas Loft.
[16] His wife is jointly liable on the note.
[17] Mr. Reed is the major stockholder in the Canvas Loft.
[18] He testified he transferred one-third of the stock to a friend.
[19] In determining his obligations, his vocational skills and employability are significant *factors to consider:*
[20] Court found he earns $86 a wk. from National Guard (not what was listed on his financial affidavit)
[21] Prior to starting his business in 1977 his employment history shows salaried jobs ranging from $12,500 to $17,000.
[22] He holds a college degree and has passed a real estate exam.

**118**

## II.

 The doctrine of collateral estoppel, applicable in dischargeability proceedings,[4] serves to avoid duplicative litigation and the attendant waste of resources.[5] Since this doctrine conflicts with the well recognized policy of permitting wide access to the courts by precluding evidence on particular issues, the application of this doctrine must be closely scrutinized,[6] but where certain standards have been met, bankruptcy courts may employ the doctrine of collateral estoppel. Those standards were enunciated in *In re Supple, supra* note 4, at 903:

> (1) the issue sought to be precluded must be the same as that involved in the prior action; (2) the issue must have been actually litigated; (3) it must have been determined by a valid and final judgment, and (4) the determination must have been essential to the final judgment. [citations omitted]

*See generally,* J. Moore *1B Moore's Federal Practice* ¶ 0.443[1] (2d ed. 1982).

 Thus, the first inquiry must be whether the issues in the state court action are the same as involved in the dischargeability proceeding.

 In the instant proceeding, the court must decide whether the subject debts were imposed as part of a property division or were actually in the nature of alimony, maintenance or support," 11 U.S.C. § 523(a)(5).[7] That was not the focus of issues before the state court.

Assuming, *arguendo,* that the issues that were before the state court are identical to those here, it is clear that a majority of the alleged findings of fact were not essential to the state court's judgment. While it is unstated in the memorandum what standards the state court was applying, it may be assumed that the judgment was rendered in accordance with Conn.Gen.Stat. §§ 46b–82 (alimony) and 46b–81 (property division). Those statutes, which are substantially similar to each other, require the court to balance many factors in awarding alimony or dividing property. Since it cannot be said that any of the alleged facts, as selected by the plaintiff, were necessary for the state court's decision, the plaintiff's motion must be denied.

Furthermore, most of the facts urged by the plaintiff do not establish ultimate facts in this dischargeability proceeding, which is an additional basis for rejection of the plaintiff's contention. *The Evergreens v. Nunan,* 141 F.2d 927 (2d Cir.), *cert. denied,* 323 U.S. 720, 65 S.Ct. 498, 89 L.Ed. 579 (1944) (holding that the facts determined in

---

[23] He has, in the past, earned substantial income from part-time employment while part owner of the Canvas Patch and while serving in the National Guard.

[24] *The Marital Home:* The fair market value is $73,500.

[25] Home presently encumbered with two mortgages ($17,143.00 and $29,894.00); and equity in home therefore $26,463.00.

[26] *Future Income:* Mr. Reed has potential pension from military when he completes an additional 5 years of service.

[27] *Joint Liabilities:* Milford Hospital, Dr. Coassin, Dr. Coggdillo, Dr. Buckman, Dr. Chutsian, Master Charge/lawsuit

[28] *Other Assets owned by Mr. Reed:* 1981 Ford pick-up truck, Moped, Sunfish

4. *In re Supple,* 14 B.R. 898 (Bkrtcy.D.Conn. 1981); *Spilman v. Harley,* 656 F.2d 224 (6th Cir.1981) (arising under former Bankruptcy Act).

In the context of 11 U.S.C. § 523(a)(5), the applicability of the doctrine of collateral estoppel has been stated as follows:

"[A]ny necessary factual issue actually litigated in the former suit estops further inquiry into that issue in this Court. *See* 1B *Moore's Federal Practice* ¶ 0.441(2) et seq. (2d ed. 1974). If both parties appear and the court received evidence and made a determination of what was necessary for the support of the spouse, the factual findings would be binding upon the parties."
*In re Warner,* 5 B.R. 434, 441–42 (Bkrtcy.D. Utah 1980).

5. *Tillman v. National City Bank,* 118 F.2d 631, 634 (2d Cir.), *cert. denied,* 314 U.S. 650, 62 S.Ct. 96, 86 L.Ed. 521 (1941).

6. *See In re Romeo,* 16 B.R. 531, 534 (Bkrtcy.D. N.J.1981).

7. Indeed, some bankruptcy courts have extended their scrutiny to the circumstances of the parties at the time the bankruptcy petition is filed. *E.g., In re Warner,* 5 B.R. 434 (Bkrtcy.D. Utah 1980). *But see In re Comer,* 10 B.C.D. 294, 27 B.R. 1018 (B.A.P. 9th Cir.1983).

the first action must establish *ultimate facts* in the second.).[8]

It is accordingly ORDERED that the plaintiff's motion is denied.

---

**8.** Although the rule expressed in *The Evergreens* has been questioned, *United States v. Kramer,* 289 F.2d 909, 916–18 (2d Cir.1961) and otherwise qualified, *Winters v. Lavine,* 574 F.2d 46, 57 n. 12 (2d Cir.1978), it still appears valid in this circuit. *Id.*