**In the Matter of Robert Lyle CHEATHAM, Debtor.**

**Richard A. DEVOE, Plaintiff,**

v.

**Robert Lyle CHEATHAM, Defendant.**

**Bankruptcy No. BK 83–2892.
Adv. No. AP 83–0822.**

United States Bankruptcy Court,
N.D. Alabama, N.D.

March 27, 1984.

Stephen V. Hammond, Chenault, Chenault & Hammond, Decatur, Ala., for plaintiff.

Albert P. Brewer, Brewer, Lentz, Nelson & Whitmire, Decatur, Ala., for defendant.

## MEMORANDUM OPINION

EDWIN D. BRELAND, Bankruptcy Judge.

This matter is before the Court on the complaint of Richard A. Devoe seeking to have a debt declared nondischargeable pursuant to 11 U.S.C. Section 523(a). Prior to the date set for trial, the plaintiff filed a motion for summary judgment on the basis of the state court judgment. Trial in this cause was held on the 12th day of October, 1983.

From the arguments presented and evidence in the form of the transcript of the previous proceeding in the Circuit Court of Morgan County, Alabama, the Court makes the following findings of fact and conclusions of law. This action arose from the sale of a certain automobile by the defendant to the plaintiff in March, 1980. The plaintiff sued the defendant in the Circuit Court of Morgan County, claiming fraud and violation of two federal statutes relating to the alteration of the odometer prior to the sale of an automobile. A jury trial was held in said state court on December 2, 1982, whereupon the jury rendered a verdict in favor of the plaintiff in the amount of $9,000.00.

The initial question presented to the Court is the applicability, or nonapplicability, of res judicata or collateral estoppel with regard to the state court's determination of the issues of fraud and willful and malicious injury. This issue centers on the similarity between the pleadings and findings in the state court proceedings and the evidence necessary to determine the dischargability of a debt under Section 523(a)(2) and Section 523(a)(6) of the Bankruptcy Code. The leading case concerning these matters is *Spilman v. Harley*, 656 F.2d 224 (6th Cir.1981), which states that the "determination whether or not a certain debt is dischargeable is a legal conclusion based upon the facts in the case. The bankruptcy court has the exclusive jurisdiction to make that legal conclusion". *Spilman* at 227. The *Spilman* court noted that Congress clearly intended the Bankruptcy Court to determine the final result in this regard, and thus the doctrine of res judicata does not generally prevent the Bankruptcy Court from conducting an independent inquiry into factual matters concerning the question of dischargeability. *Spilman* at 227. (See also *Brown v. Felsen*, 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979)). The plaintiff in the instant case contends that the issues of fraud and willful and malicious injury are precluded from reexamination by virtue of the doctrine of collateral estoppel. However, the *Spilman* court held that collateral estoppel only applies when the precise issue raised in the Bankruptcy Court has been raised and actually litigated in the earlier proceeding, and that the resolution of such an issue was necessary to the prior court's findings. Thus, the initial determination to be made by this Court is whether or not the precise issues raised in the instant proceeding are identical to those pled and litigated in the state court proceedings. In making such a determination, the Court is to examine the record of the non-bankruptcy proceeding, or conduct any necessary independent hearing. *Spilman* at 228.

The majority of courts have followed the ruling in *Spilman,* and the rationale behind the decision has been refined into particular enumerated "standards". See *In re Supple,* 14 B.R. 898, 903 (Bkrtcy.Conn. 1981). Many courts have also required that not only must the identical issues have been raised, litigated and resolved, but that the determination of such issues must establish "ultimate facts" necessary in the bankruptcy dischargeability proceedings. *In re Reed,* 31 B.R. 116, 118, 119 (Bkrtcy. Conn.1983).

The complaint in the state court proceeding is in three counts: (1) fraud, (2) violation of 15 U.S.C. Section 1984 and (3) violation of 15 U.S.C. Section 1988. A general denial was filed as an answer. Regardless of whether or not the state court judgment was based on the federal statutes, any findings that would lead to a damage award based on the violation of these odometer regulating statutes has little bearing on this Court's determination of the dischargeability of a particular debt (except, perhaps, on the smaller issue of an "intent to defraud"). Upon application of the reasoning of *Spilman* and the subsequent line of similar decisions, this Court is not bound by earlier findings relating to these federal statutes, since the standards that could be applied to a determination of the issues involved under these statutes are broader, and therefore not identical to those necessary to resolve the question of dischargeability. *In re Huriash,* 26 B.R. 372, 373 (Bkrtcy.S.D.Fla.1982). This is especially true with regard to the "willful and malicious" standard required to be proven under Section 523(a)(6) to except the debt from discharge. Also, the fraud alleged in the plaintiff's complaint raised no issue concerning the willfulness and maliciousness of the defendant's intent to defraud the plaintiff. The plaintiff argues that the punitive damage award given by the jury was in accordance with the charge given the jury concerning the "willful, malicious and oppressive" nature of any fraud being grounds for a punitive damage award. However, the Court cannot view such an implication as conclusive proof that the defendant willfully and maliciously injured the plaintiff by bankruptcy standards. Upon review of the pleadings, transcript excerpt and jury verdict of the state court proceedings, this Court can find no evidence sufficient to justify a ruling of nondischargeability based on willful and malicious injury pursuant to 11 U.S.C. Section 523(a)(6).

█ Although there was no clear finding of willful and malicious injury in the state court proceeding, there does appear to be an implied finding of some type of fraudulent conduct as indicated by the jury verdict in favor of the plaintiff. The fact that this Court was provided only the jury verdict as evidence of the actual findings of the state court presents a special problem of ambiguity. Upon careful review of the pleadings, the transcript (including the charges to the jury) and the jury verdict, the Court is not satisfied that the exact issues involved in the present allegation of false pretenses, false representation or actual fraud pursuant to Section 523(a)(2)(A) have been fully raised, litigated and resolved in the earlier proceeding. Clearly, the type of fraud contained in Count I of the plaintiff's complaint in the state court action is not identical to nondischargeable "fraud" under the Bankruptcy Code. The dischargeability of the judgment debt is a question of federal law, and is distinguishable from the issues surrounding a determination of fraud under state law. *Huriash* at 373. The emphasis on providing the debtor with a "fresh start" under the Bankruptcy Code is indicative of policy considerations that go far beyond usual questions of state law. Thus, the degree of proof required to declare a debt nondischargeable on the basis of fraudulent conduct of the debtor is very high—"clear and convincing"—as compared to the usual preponderance-of-the-evidence standard of proof in non-bankruptcy fraud actions. See *In re Cook,* 21 B.R. 112, 114 (Bkrtcy.N. M.1982). Therefore, it cannot be shown that the issues litigated in the prior proceeding are identical to those presented to this Court, in light of the differential in the

standards of proof as well as the lack of specific findings inherent in a jury verdict. On this basis alone, the plaintiff's motion for summary judgment is due to be denied. *In the Matter of Klix*, 21 B.R. 2, 3 (Bkrtcy. E.D.Mich.1982).

Based on the foregoing determination that neither the doctrine of res judicata nor the doctrine of collateral estoppel precludes this Court from making an independent examination of the facts in this case, the Court makes the following findings upon review of the transcript provided to the Court. The defendant purchased the 1974 Pontiac LeMans from McRae Motors in Decatur, Alabama, on March 14, 1980. At the time of said purchase, the odometer read 99,335 miles. Later that month, the plaintiff came to the defendant's place of business to view the vehicle. The plaintiff's son was employed by the defendant in his vinyl top repair business, and had told his father about the car. The defendant bought and sold used cars on a limited basis from his place of business, under the name of "Ace Motor Company". The plaintiff testified that he checked the mileage on the automobile when he first visited the defendant's place of business, and that there were approximately 63,000 miles showing on the odometer at that time. The defendant quoted a price of $900.00 upon inquiry by the plaintiff. Later that afternoon, the plaintiff came back to the defendant's business and purchased the car for $900.00. Apparently, the defendant made no overt representations concerning the quality or condition of the car. A bill of sale was executed and dated March 26, 1980. The automobile developed several problems during the months that followed, including malfunctioning of the alternator, radiator, transmission, carburetor, starter, and master cylinder.

It is clear that at some point between the time the defendant bought the vehicle from McRae Motors and the sale of the car by the defendant to the plaintiff, the odometer reading was altered. The defendant contends that although he had previously "rolled back" odometers before doing so was prohibited by statute, he has not done so since, and did not alter the odometer on the 1974 LeMans. The plaintiff's son, who worked for the defendant at the time of the sale, testified that he had witnessed the defendant removing the dashboard from various cars and taking the speedometer mechanism into his office, whereupon the mileage reading would be altered on the odometer. According to the plaintiff's son, this procedure was performed on the Le-Mans, but the son did not inform his father of this practice. The credibility of the testimony of the plaintiff's son was brought into question by the defendant in the state court trial on the grounds of bias and improper motive. However, the jury seemed to believe the son's account of this practice, and this Court feels that his testimony provides a credible explanation of how the odometer reading was changed between the defendant's purchase of the car and the plaintiff's first examination of the car. The uncontroverted evidence indicates clearly that the odometer was altered during the period of the defendant's ownership and possession of the automobile.

In seeking a determination of nondischargeability, under 11 U.S.C. Section 523(a)(2)(A), the creditor must establish by clear and convincing evidence that there was a knowingly false representation made with the intent to deceive the creditor, who reasonably relied on the false representation and suffered damage as a result. *Matter of Kalinowski*, 27 B.R. 114, 116 (Bkrtcy.M.D.Fla.1983). In the present dispute, the defendant argues that there were no representations of any kind made by the defendant to the plaintiff prior to, or at the time of, the transaction in question. Although the evidence presented in the state court proceeding supports this contention with regard to any overt or oral representation, there remains the question of whether there was an implied misrepresentation that would constitute a "false pretense". See *Matter of Weinstein*, 31 B.R. 804 (Bkrtcy.E.D.N.Y.1983). There is little question concerning the intention of one who "rolls back" an odometer before offering a used car for sale, and then fails to disclose such to a prospective purchaser. Clearly, doing so constitutes "conduct intended to create and foster a false impres-

sion...." *Weinstein* at 809. Thus, silence in this regard creates an implied misrepresentation that is tantamount to an overt false representation. Such failure to disclose also necessarily establishes knowledge on the part of the debtor concerning the conduct that has not been disclosed. As mentioned before, the practice of altering an odometer to a reduced mileage reading is generally done for a particular purpose—to defraud a prospective purchaser. At the very least, such an alteration can be viewed as "the product of a fraudulent design". *In re Musser*, 24 B.R. 913, 918 (W.D.Va.1982). Thus, the defendant's intent to defraud the plaintiff by virtue of these false pretenses can be found from the odometer alteration itself, the failure to disclose such an alteration and the evidence that indicated that the defendant had previously done so on numerous occasions. Such conduct certainly constitutes circumstances from which an intent to defraud the plaintiff can be inferred. See *In re Goldstein*, 26 B.R. 266, 267 (Bkrtcy.S.D. Fla.1982). The testimony heard in the state court trial indicated that the plaintiff reasonably relied on the mileage reading on the odometer when making the decision to purchase the automobile from the defendant. As a result of reliance on the validity of the odometer reading, the plaintiff suffered actionable injury.

Upon consideration of the foregoing findings of fact and conclusions of law, the Court is of the opinion that the sale of the automobile from the defendant to the plaintiff was made under false pretenses created by the defendant, and the debt created by such fraudulent conduct is nondischargeable.

■ Having concluded that the debt arising from the defendant's action in the sale of the automobile is nondischargeable, the Court must determine the amount of such a debt that is nondischargeable. It is very difficult to apportion the damages awarded by the jury as to actual, compensatory or punitive damages. The only specified portion of the damage award is the attorney's fee of $1,000.00. With regard to the dischargeability of an award of attorney's fee, it is well-settled that unless there is statutory or contractual authority for such an award, the debt created thereon is dischargeable. The state court jury was charged to award attorney's fees only upon finding for the plaintiff under the federal statutes. However, as discussed previously, the "fraud" on which the federal statutes are based is much broader in scope than the standard applied by the Court in the previously-discussed analysis of the dischargeability issue in the instant case. Thus, the fraud that resulted in this Court's finding of nondischargeability is more in the nature of common-law tortious fraud rather than any contractual or statutory cause of action. Therefore, the $1,000 award of attorney's fees is dischargeable. See generally *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975), as followed in *Beard v. Beard*, 5 B.C.D. 680 (Bkrtcy.M.D.Tenn.1979).

■ The remaining issue before the Court concerns the dischargeability of the portion of the state court judgment debt that represents punitive damages assessed by the jury against the defendant. Upon subtracting the award for attorney's fees and the maximum actual damages of $900.00, the Court finds that the amount of punitive damages awarded by the jury is at least $7,100.00. This amount appears to constitute the "penalty" imposed by the jury on the defendant for his fraudulent conduct. This Court cannot, in equitable good conscience, punish the innocent unsecured creditors by virtue of a substantial depletion of the estate for a wrong committed by the debtor. As noted in *In re Ryan*, 15 B.R. 514, 520 (Bkrtcy.Md.1981), "(t)he intent of Congress was that unsecured creditors should be protected from 'the debtor's wrongdoing.'" (citing H.R.Rep. No. 95–595, 1st Sess. 382 (1977), U.S.Code Cong. & Admin.News 1978, p. 5787). The maximum actual pecuniary loss suffered by the plaintiff as a result of the false pretenses is the amount paid for the automobile—$900.00. Even if the car sold by the defendant had been absolutely worthless, the plaintiff would be adequately compensated by a damage award of $900.00. Before the Bankruptcy Code went into ef-

fect, there was a great deal of confusion and conflicting judicial interpretations of the dischargeability of punitive damages assessed against the debtor in prior proceedings. See *Beard,* supra, at 682, 683; contra, *U.S. v. RePass,* 688 F.2d 154, 157 (2d Cir.1982). Such uncertainty was principally due to the "provable debt" concept contained in Section 17 and Section 63 of the Bankruptcy Act. However, the Bankruptcy Code no longer refers to the provable and non-provable distinctions. The "provability" of a debt no longer has any bearing on whether or not the debt is dischargeable. See 3 Collier on Bankruptcy, Section 523.02 (15th ed. 1983). Thus, based on the maximum amount of actual loss suffered by the plaintiff and in the interest of fairness to the unsecured creditors, the Court concludes that the plaintiff is entitled to judgment in the amount of $900.00, and said amount is to be nondischargeable pursuant to 11 U.S.C. Section 523(a)(2)(A). The balance of the state court jury award is due to be allowed as an unsecured claim, and is therefore dischargeable.

An appropriate Order in accordance with this opinion will be entered.