**In the Matter of Dewey R. ARMSTRONG and Helen M. Armstrong, Debtors.**

**M.P. CASH and Jennie G. Cash, Plaintiffs,**

v.

**Dewey R. ARMSTRONG and Helen M. Armstrong, Defendants.**

**Bankruptcy No. 85–02494. Adv. No. 85–0325.**

United States Bankruptcy Court, N.D. Alabama, S.D.

Oct. 22, 1985.

Arthur Green, Jr. and R. Shan Paden of Paden, Green, Paden & Bivona, Bessemer, Ala., for plaintiffs.

Walter W. Furner and Robert C. Boyce, III of Furner, Boyce & Nave, Birmingham, Ala., for defendants.

James G. Henderson, Trustee, Birmingham, Ala.

B. Jack Rivers, U.S. Trustee.

### OPINION

CLIFFORD FULFORD, Bankruptcy Judge.

Judgment creditors, Mr. and Mrs. Cash, ask this Court to except their state court fraud judgment against the Debtors, Mr. and Mrs. Armstrong, from discharge under the "false representation, or actual fraud" and "willful and malicious injury" provisions of the Bankruptcy Code, 11 U.S.C.

§§ 523(a)(2)(A) and 523(a)(6).[1] The issues in this case arose out of representations made by the Armstrongs concerning the chimney of the residence they sold to the Cashes, and the problem the Cashes later had with it.

This is a core proceeding. 28 U.S.C. § 157(b)(2)(I). The following constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and Rule 52 of the Federal Rules of Civil Procedure.

By a motion for summary judgment, the Cashes first contended that their state court judgment foreclosed the issue of dischargeability for fraud under the principle of collateral estoppel. They supported their motion with parts of the record of the state court case, and the Armstrongs supplied other parts; however, the entire record was never before the Court. From the parts of the record made available, it was clear that the Cashes' case was submitted to the jury on a single count that charged the Armstrongs with false representation and fraud.[2]

The transcript of Mrs. Cash's testimony on the state court trial contained her account of contacts with the Armstrongs during the two weeks before August 10, 1978 when she and her husband signed a contract to buy the property. On her first visit to the house with a real estate agent, only Mrs. Armstrong was there. On her second visit, accompanied by Mr. Cash and the agent, both Mr. and Mrs. Armstrong were present. On this visit, Mrs. Cash asked about the fireplace and chimney. She was concerned because a nephew's chimney had fallen away from his house. Mr. Armstrong told her, "I'm an expert on chimneys and you don't have any worries there." He also told the Cashes that he had had no trouble whatsoever with the chimney or the fireplace. Mr. Armstrong also told Mrs. Cash he had built the house.

Mrs. Cash testified that she had no expertise in the building of chimneys or fireplaces. She said she and her husband looked at the chimney and did not see anything wrong with it, although a reinforcing pad around it did not appeal to them. Two days after their last visit, they signed the contract to buy the house.

The transcript of Mr. Cash's testimony generally confirmed his wife's recollection of Mr. Armstrong's statements. He also testified that after moving in the home, he had some problems which included mortar coming out from between the bricks and falling into the ashes. He had this fixed at a cost of $169.00. He was reimbursed by the Armstrongs.

In January, 1982, Mr. Cash noticed that the chimney was separating from the house. He contracted the repairs which were completed in March, 1982. The Cashes filed suit against the Armstrongs in the Bessemer Division of the Circuit Court of Jefferson County, Alabama on July 6, 1982.

There was other testimony in the state court trial, but only the transcripts of the evidence given by Mr. and Mrs. Cash were furnished to this Court for its consideration of the motion for summary judgment. Other witnesses testified, but the transcripts of their testimony were not before the Court. The transcripts submitted did contain the state court's instructions to the jury, including the following excerpts critical to this Court's determination whether or not the judgment debt is dischargeable for fraud:

> The plaintiff [sic] in this case is claiming damages from the defendants for an alleged legal fraud practiced upon them by the defendants. The fraud charged in

---

1. 11 U.S.C. § 523 provides in pertinent part:
   (a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—
   (2) for money, [or] property ... to the extent obtained, by—
   (A) false pretenses, a false representation, or actual fraud, ... [or]

   (6) for willful and malicious injury by the debtor to another entity or to the property of another entity.

2. The state court directed a verdict for the Armstrongs on the only other count, which charged breach of implied warranty of habitability.

the plaintiffs' complaint is that the defendants represented that this chimney was in good condition and was not damaged and was constructed in a good and workmanlike manner. The defendants, for answer to the complaint, say that they are not guilty of the charge contained in the plaintiffs' complaint.

I will charge you, first of all, on deceit. If you are reasonably satisfied from the evidence that the defendants deceived the plaintiffs by a willful representation of a material fact as true which they knew to be untrue to induce the plaintiffs to act and plaintiffs did act thereon to their injury, the defendants are guilty of a deceit, which is legal fraud.

I further charge you that the defendants' knowledge of the falsehood is an element of deceit. A fraudulent or reckless representation of the facts as true, which the defendant [sic] did not know to be false, if intended to deceive the plaintiffs, is equivalent to the knowledge of the falsehood.

I will now charge you on willful misrepresentation. If you are reasonably satisfied from the evidence that the defendants willfully misrepresented a material fact to the plaintiffs with the intent to induce the plaintiffs to act thereon, and the plaintiffs did, without knowledge of its falsity, act upon said willful misrepresentation to their injury, then the defendants are guilty of legal fraud.

The plaintiffs in this case are claiming damages from the defendants for an alleged fraud. If you are reasonably satisfied by the evidence that the defendants were guilty of a legal fraud as charged by the plaintiffs and that the plaintiffs were damaged thereby, the plaintiffs will be entitled to recover for such actual damage as you find from the evidence that they did suffer.

In addition to actual damages, the law authorizes a jury to award punitive damages in fraud and deceit actions if it is shown to the reasonable satisfaction of the jury by the evidence that the fraud or deceit was malicious, oppressive, or gross or a misrepresentation made with the knowledge of its falseness and committed with the intent to injure and defraud.

If you are reasonably satisfied from the evidence that the defendants were guilty of a fraud or deceit as charged by the plaintiffs and that such fraud or deceit was malicious, oppressive, or gross, and made with the intent to injure and defraud the plaintiffs, and the plaintiffs did suffer damage as a proximate result of such fraud or deceit, then, in your discretion, you may award the plaintiffs punitive damages in addition to any actual damages you find from the evidence the plaintiffs did suffer.

On the other hand, if you are not reasonably satisfied from the evidence that the defendants were guilty of a fraud or deceit which was malicious, oppressive, or gross, and made with knowledge of its falseness with the intent to injure the plaintiff, you cannot award the plaintiffs punitive damages.

If you are reasonably satisfied by the evidence that the defendants were not guilty of legal fraud as charged by the plaintiffs or that the plaintiffs suffered no damage as a proximate consequence of a legal fraud, the plaintiffs would not be entitled to recover.[3]

---

**3.** The state court based its charge on *Code of Alabama,* 1975, §§ 6–5–101 and 6–5–103 which are as follows:

*§ 6–5–101. [Fraud]—Misrepresentations of material facts.*

Misrepresentations of a material fact made willfully to deceive, or recklessly without knowledge, and acted on by the opposite party, or if made by mistake and innocently and acted on by the opposite party, constitute legal fraud.

*§ 6–5–103. Deceit—Right of action generally.*

Willful misrepresentation of a material fact made to induce another to act and upon which he does act to his injury, will give a right of action. Mere concealment of such a fact, unless done in such a manner as to deceive and mislead, will not support an action. In all cases of deceit, knowledge of a falsehood constitutes an essential element. A fraudulent or reckless representation of facts as true, which the party may not know to be

On the basis of these instructions, the jury returned a verdict for the Cashes in the amount of $10,000.00, and the state court entered its judgment on the verdict on October 30, 1984. No appeal was taken. The judgment is final.

The Armstrongs filed their voluntary petition under Chapter 7 of the Bankruptcy Code on April 22, 1985.[4] The Cashes timely filed their complaint to determine the dischargeability of their judgment and moved for summary judgment which the Court denied. The question of collateral estoppel was carried over for further consideration on the trial.[5]

On the trial of the dischargeability complaint, the Cashes supplied evidence, not available in support of their motion for summary judgment, which clearly established that their judgment debt should be excepted from Mr. Armstrong's discharge.

The evidence is clear and convincing that Mr. Armstrong's representations about the chimney were false, and that he knew they were false when he made them to the Cashes. After the Armstrongs placed their residence on the market for sale but before they entered into a sales contract with the

Cashes, Mr. Armstrong complained to his insurance company that strip mine blasting two miles away had caused his chimney to crack along its intersection with the exterior wall of the residence. On July 19, 1978, Mr. Logan R. Ritchie, Jr., a professional engineer engaged by Alabama Farm Bureau Insurance Company, the insurer of the Armstrongs' residence, visited Mr. Armstrong to determine the validity of the complaint. Mr. Ritchie found part of the exterior chimney dismantled, and Mr. Armstrong showed him separations at the upper portion of the chimney from the rear brick wall of the residence. He found that part of the brick veneer was loose from the stud walls of the residence.

Mr. Ritchie questioned Mr. Armstrong about the method of his construction of the house. He asked Mr. Armstrong to show him some "brick ties" used to "tie" a chimney to an exterior wall. He could not, and Mr. Ritchie could not find any in the chimney, in the wall, or in the debris from the dismantling operation. Additionally, Mr. Ritchie did not see any evidence that the chimney was bonded in any way to the

false, if intended to deceive, is equivalent to a knowledge of the falsehood.

The state court's charge did not include that part of § 6–5–101 which recognizes legal fraud on the basis of misrepresentations of material fact made by mistake and innocently. To the extent the charge included reference to "reckless representation of facts as true" found in § 6–5–103, it is consistent with the holding in *Birmingham Trust Nat. Bank v. Case*, 755 F.2d 1474, 1476 (11th Cir.1985), "that reckless disregard for the truth or falsity of a statement constitutes a 'false representation' under § 523(a)(2)(A) of the Bankruptcy Code." *Accord, In re Houtman*, 568 F.2d 651 (9th Cir.1978).

**4.** The Debtors' Schedule A to their Chapter 7 Voluntary Petition lists four outstanding debts: $11,638.92 secured by a 1985 automobile, reaffirmed by the Debtors; $2,200.00 as an unsecured personal loan; $904.00 due as unsecured for legal services; and the $10,093.00 judgment which is the subject of this case.

**5.** In denying the motion for summary judgment, the Court questioned whether the parts of the state court proceedings made available to it conclusively established that the judgment could not have been based upon misrepresentations of

material facts made by mistake and innocently, one of the alternative bases for liability under § 6–5–101, *Code of Alabama*, 1975. A judgment for such constructive fraud would be dischargeable. *Ames v. Moir*, 138 U.S. 306, 311, 11 S.Ct. 311, 312, 34 L.Ed. 951 (1891); *In re Hunt*, 30 B.R. 425 (M.D.Tenn.1983); *Matter of Cheatham*, 44 B.R. 4, 6 (Bkrtcy.N.D.Ala.1984); *In re Holt*, 24 B.R. 696 (Bkrtcy.E.D.Va.1982); and *In re Bruce*, 18 B.R. 135 (Bkrtcy.D.Vt.1982). For an analysis of the Alabama fraud statutes, see *Kaye v. Pawnee Constr. Co., Inc.*, 680 F.2d 1360 (11th Cir.1982). Recognizing the responsibility of the bankruptcy court to exercise its exclusive jurisdiction to determine the dischargeability of the debt, the issue of collateral estoppel was carried over for consideration on the trial of dischargeability to permit the parties to illuminate the issue if they wished. "[B]efore applying the doctrine of collateral estoppel, the bankruptcy court must determine if the issue was actually litigated and was necessary to the decision in the state court. To do this, the bankruptcy court should look at the entire record of the state proceeding, not just the judgment, ... or hold a hearing if necessary...." *Spilman v. Harley*, 656 F.2d 224, 228 (6th Cir.1981) (citations omitted); *accord Matter of Cheatham*, 44 B.R. 4, 5 (Bkrtcy.N.D.Ala.1984).

brick veneer. He found that the chimney was built out of almost solid brick, particularly at the upper portion.

It was Mr. Ritchie's opinion that the cracks at the intersection of the chimney and the exterior brick veneer wall were due to improper construction and not to blasting. He stated that the chimney was heavier than the wall of the residence; that the chimney foundation settled and rotated outward slightly; and that since the chimney was not tied to the residence, a crack came in the chimney at its intersection with the brick veneer of the residence.

Mr. Ritchie made his report to Alabama Farm Bureau by letter dated August 28, 1978, the same day the sale of the residence was closed and the Armstrongs delivered their deed 'to the Cashes.

■ To determine that a debt is nondischargeable for false representation or actual fraud under section 523(a)(2)(A), the creditor must establish that the debtor made materially false representations which he knew to be false at the time he made them; that he made them with the intention and purpose of deceiving the creditor; and that the creditor relied on such representations to his loss and damage proximately caused by the debtor's misrepresentations. *In re Houtman*, 568 F.2d 651 (9th Cir.1978); *Matter of Cheatham*, 44 B.R. 4 (Bkrtcy.N.D.Ala.1984); *In re Hunt*, 30 B.R. 425 (D.C.M.D.Tenn.1983). As to Mr. Armstrong, all of these requirements have been met apart from the claimed preclusive effect of the state court judgment. It is not credible that Mr. Armstrong did not know, when he told the Cashes that the chimney had given him no trouble, that it was not true. The Court has no difficulty in concluding from the evidence on the plenary hearing of the dis-

chargeability issue, that the state court judgment is not dischargeable as to Mr. Armstrong under both sections 523(a)(2)(A) and 523(a)(6).[6]

The Supreme Court said in *Ames v. Moir*, 138 U.S. 306, 11 S.Ct. 311, 34 L.Ed. 951 (1891), that the fraud from which a bankrupt is not relieved by a discharge in bankruptcy is "positive fraud, or fraud in fact, involving moral turpitude or intentional wrong ... and not implied fraud, or fraud in law, which may exist without the imputation of bad faith or immorality." 138 U.S. at 311, 11 S.Ct. at 312, citing *Neal v. Clark*, 95 U.S. 704, 24 L.Ed. 586 (1877). In *Brown v. Felson*, 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979) the Court took note of Congressional intent, in enacting a 1903 amendment of provisions for exceptions to discharge in the 1898 Bankruptcy Act, "to exclude beyond peradventure certain liabilities growing out of offenses against good morals." 442 U.S. at 138, 99 S.Ct. at 2213.

The United States Courts of Appeal for the Eleventh and Ninth Circuits hold reckless disregard for the truth or falsity of a statement sufficient to satisfy the scienter requirements of section 523(a)(2)(A). *Birmingham Trust Nat. Bank v. Case*, 755 F.2d 1474 (11th Cir.1985); and *In re Houtman*, 568 F.2d 651 (9th Cir.1978). Curiously, as the Eleventh Circuit notes in *In re Held*, 734 F.2d 628 (11th Cir.1984) the "reckless disregard" standard of *Tinker v. Colwell*, 193 U.S. 473, 24 S.Ct. 505, 48 L.Ed. 754 (1902) is no longer enough to deny a discharge under the "willful and malicious" provisions of section 523(a)(6). We are unable to explain or rationalize this difference in perceived Congressional intent which permits discharge of a debtor for his reckless disregard of the "willful and malicious" requirement of section

---

6. The evidence recited in the body of this Opinion was not all of the evidence. Mr. Armstrong was an electrician employed by United States Steel. Over a number of years, he had built homes, lived in them, sold them and built others to live in and sell. He was experienced in residential construction work. The Cashes did not have comparable or similar experience. They relied on the Armstrongs' representations

about the chimney in deciding to buy the home. They would not have bought the residence if they had known about the trouble with the chimney. Not long after they bought the house, mortar that had fallen into the fireplace had to be replaced. Even though the Armstrongs had declined to give the Cashes a warranty on the house, the Armstrongs paid the Cashes for the cost of this mortar replacement.

523(a)(6) and denies him a discharge for his reckless disregard of the truth under section 523(a)(2)(A).

■ The Cashes argue that both sections apply to prevent the discharge of their judgment against the Armstrongs. Indeed, the strongest moral imperatives of both sections have been satisfied by the evidence to except the judgment debt from the discharge of Mr. Armstrong. There is no suggestion that the state court judgment collaterally estops the bankruptcy court on the issue of dischargeability under section 523(a)(6), and consideration of issue preclusion is confined to the effect of the state court judgment under the false representation and fraud provisions of section 523(a)(2)(A).

■ It is the dischargeability of the judgment debt as to Mrs. Armstrong that presents a problem. Mr. Ritchie's testimony which necessitates the nondischargeability of the judgment debt as to Mr. Armstrong, did not involve Mrs. Armstrong. While Mrs. Armstrong joined her husband in making the representations about the chimney, she has not been shown by the evidence to have had the same direct knowledge of the problem with the chimney that Mr. Ritchie's testimony fixed on Mr. Armstrong.[7] As to her, this Court does not find from the plenary hearing the clear and convincing evidence of her culpability necessary to justify the exception sought to her discharge. While it is improbable that Mrs. Armstrong could have lived in the residence and not known about the dismantling of the exterior chimney, there is no evidence that she was actually present there at that time, or if she was, what her perception of that event told her. The evidence on plenary hearing of the dischargeability issue was not sufficient to overcome the presumptions against fraud, *In re Hunt*, 30 B.R. 425 (M.D.Tenn.1983), *D.H. Holmer Department Store v. Feil*, 472 So.2d 1001 (Ala.1985), *Mahoney v. Forsman*, 437 So.2d 1030 (Ala.1983), and *Johnson v. Keener*, 370 So.2d 265 (Ala. 1979); and the policy favoring dischargeability, *Matter of Cross*, 666 F.2d 873 (5th Cir.1982) (Unit B), which attend Mrs. Armstrong in this case. If the state court judgment is to be excepted from her discharge, it must be on the basis of issue preclusion.

■ It is emphasized, because of the difference it makes, that we are concerned here with *issue* preclusion (collateral estoppel) and not with *claim* preclusion (res judicata).[8] *Brown v. Felson*, 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979) instructs the bankruptcy court to make its

---

**7.** On the dischargeability trial, Mrs. Cash's testimony, refreshed by notes she made, was that Mrs. Armstrong made the same statements about the chimney attributed by Mrs. Cash only to Mr. Armstrong on the state court trial.

**8.** *Issue* preclusion (collateral estoppel) bars relitigation of identical issues actually tried and necessarily decided in a prior suit. *Brown v. Felson*, 442 U.S. 127, 139 n. 10, 99 S.Ct. 2205, 2213 n. 10, 60 L.Ed.2d; *In re Held*, 734 F.2d 628, 629 (11th Cir.1984); *Matter of Shuler*, 722 F.2d 1253, 1256 (5th Cir.1984), *cert. denied*, — U.S. —, 105 S.Ct. 85, 83 L.Ed.2d 32 (1984); *Matter of Raiford*, 695 F.2d 521, 523 (11th Cir.1983); *Spilman v. Harley*, 656 F.2d 224, 228 (6th Cir. 1981); *Key v. Wise*, 629 F.2d 1049, 1063 (5th Cir.1980) *cert. denied*, 454 U.S. 1103, 102 S.Ct. 682, 70 L.Ed.2d 647 (1981); and *Matter of Merrill*, 594 F.2d 1064 (5th Cir.1979). *Claim* preclusion (res judicata) forecloses all issues that could have been tried in the first case without regard to whether they were actually tried. *Brown v. Felson*, 442 U.S. 127, 131, 139 n. 10, 99 S.Ct. 2205, 2213 n. 10, 60 L.Ed.2d 767 (1979); *Matter of Shuler*, 722 F.2d 1253, 1254–1255 (5th Cir.1984), *cert. denied*, — U.S. —, 105 S.Ct. 85, 83 L.Ed.2d 32 (1984), citing *Brown v. Felson*; *Spilman v. Harley*, 656 F.2d 224 (6th Cir.1981).

Factual differences between *Brown v. Felson* and this case point up further differences between *claim* preclusion and *issue* preclusion. In *Brown* the debtor argued that res judicata barred exploration of certain issues which had not been litigated in state court. Here the Debtors contend that collateral estoppel should not be available to bar this Court from considering issues which were actually litigated in state court.

*See also*, Ferriell, *The Preclusive Effect of State Court Decisions in Bankruptcy (First Installment)*, 58 Am.Bankr.L.J. 349 (1984); *(Second Installment)*, 59 Am.Bankr.L.J. 55 (1985), and *Issue Preclusion in Alabama*, 32 Ala.L.R. 500 (1981), exhaustive scholarly discussions of the operations of res judicata and collateral estoppel.

independent determination whether the debtor committed the fraud that excepts his discharge, unconfined by the restraint of res judicata which, by imposing grounds and defenses not previously litigated, could command decisions in dischargeability cases at odds with inquiries relevant to discharge but not actually considered or decided in the previous state court case. The question in the case now before this Court is the one left open in *Brown v. Felson:* "If, in the course of adjudicating a state-law question, a state court should determine factual issues using standards identical to those of § 17, then collateral estoppel, in the absence of countervailing-statutory policy, would bar relitigation of those issues in the bankruptcy court." 442 U.S. at 139 n. 10, 99 S.Ct. at 2213 n. 10.[9]

Have federal courts applied collateral estoppel to bar relitigation of issues tried and decided by state courts adjudicating state law questions? Is there a countervailing-statutory policy that prevents bankruptcy courts from applying collateral estoppel in deciding dischargeability issues?

The Supreme Court applied collateral estoppel to foreclose a bankruptcy court's consideration of an objection to a claim based on a judgment on the ground, twice before litigated unsuccessfully in other courts, that the judgment had been procured by fraud and perjured testimony. *Heiser v. Woodruff,* 327 U.S. 726, 66 S.Ct. 853, 90 L.Ed. 970 (1946).[10] Collateral estoppel was held to justify summary judgment to bar the discharge of a debtor who pled guilty in a criminal case to fraudulent acts having issues in common with those involved in determining his dischargeability. *Matter of Raiford,* 695 F.2d 521 (11th Cir. 1983). Summary judgment for the creditor on the issue of the debtor's dischargeability, based on state court judgments, was affirmed when the debtor failed in his burden to show the existence of fact issues with regard to the recitation in the state court judgments which closely paralleled the language of the Bankruptcy Act on which the debt was found to be nondischargeable. *Carey Lumber Co. v. Bell,* 615 F.2d 370 (5th Cir.1980). Collateral estoppel was not applied to bar discharge based on fraud and conversion counts struck from the state court action before judgment. *Matter of Merrill,* 594 F.2d 1064 (5th Cir.1979). The Ninth Circuit holds that a prior state court judgment has no collateral estoppel effect in a bankruptcy court, but may establish a prima facie case of nondischargeability. *In re Rahm,* 641 F.2d 755, 757 (9th Cir.1981), *cert. denied,* 454 U.S. 860, 102 S.Ct. 313, 70 L.Ed.2d 157 (1981) (default judgment in prior state court action); *Lawrence T. Lasagna, Inc. v. Foster,* 609 F.2d 392, 396 (9th Cir.1979) *cert. denied,* 446 U.S. 919, 100 S.Ct. 1853, 64 L.Ed.2d 273 (1980); and *In re Houtman,* 568 F.2d 651, 655 (9th Cir.1978) (judgment based on jury verdict; decided before *Brown v. Felson* ). The Sixth Circuit states in *Spilman v. Harley,* 656 F.2d 224 (6th Cir.1981), that collateral estoppel may be applied in dischargeability cases but refused to give that effect to a state court judgment where it was not shown that the issue had been actually litigated.[11] The Third Circuit has said that

---

**9.** Section 523(a)(2)(A) is the recodified version of section 17(a)(2) of the Bankruptcy Act of 1898. The differences between these sections are negligible. *Birmingham Trust Nat. Bank v. Case,* 755 F.2d 1474, 1476 (11th Cir.1985). *Compare, First Nat. Bank of Mobile v. Roddenberry,* 701 F.2d 927, 929 n. 3 (11th Cir.1983) which discusses the relationship of the sections and cites commentary contrary to the *Birmingham Trust* proposition.

**10.** The opinion calls the theory on which it relied "res judicata"; however, its judgment was based on two proceedings in which the issue was actually litigated. 327 U.S. at 736, 66 S.Ct.

at 857. The Supreme Court recognized in *Brown v. Felson* that *Heiser* gave "collateral estoppel effect to a prior decision". 442 U.S. at 139 n. 10, 99 S.Ct. at 2213 n. 10 (citation omitted). *See also* a similar reference in *Matter of Merrill,* 594 F.2d 1064, 1066, n. 1 (5th Cir.1979).

**11.** "Applying collateral estoppel is logically consistent with the Supreme Court's decision in *Brown* and the exclusive jurisdiction of the bankruptcy courts...." *Spilman* at 227. "Collateral estoppel requires that the precise issue in the later proceedings have been raised in the prior proceeding, that the issue was actually litigated, and that the determination was neces-

a prior state court judgment can have collateral estoppel effect in a bankruptcy dischargeability proceeding, but it reversed a summary judgment and remanded the case for the bankruptcy court to determine whether the requirements for the application of collateral estoppel had been met. *Matter of Ross*, 602 F.2d 604 (3rd Cir. 1979).[12] The Fifth Circuit declined to give collateral estoppel effect in dischargeability proceedings to default judgments in *Matter of Poston*, 735 F.2d 866 (5th Cir.1984), *cert. denied*, —— U.S. ——, 105 S.Ct. 591, 83 L.Ed.2d 700 (1984), and *Matter of Shuler*, 722 F.2d 1253 (5th Cir.1984), *cert. denied*, —— U.S. ——, 105 S.Ct. 85, 83 L.Ed.2d 32 (1984); and to "agreed judgments" in *Matter of Allman*, 735 F.2d 863 (5th Cir.1984),

*cert. denied*, —— U.S. ——, 105 S.Ct. 590, 83 L.Ed.2d 700 (1984).[13]

This summary reflects the diversity that exists in giving collateral estoppel effect to prior judgments in bankruptcy dischargeability cases. However, in all except the Ninth Circuit, collateral estoppel may be applied if the identical issues required to decide dischargeability were actually and necessarily litigated in reaching the prior judgment.

In recent non-bankruptcy cases, the Supreme Court has reached a similar result by applying 28 U.S.C. § 1738[14] which requires federal courts to give full faith and credit to all state court proceedings, even in cases where the claims are in the exclusive jurisdiction of the federal courts.[15] In

sary to the outcome." *Spilman* at 228 (citations omitted).

12. "... [sic] (1) the issue sought to be precluded must be the same as that involved in the prior action; (2) that issue must have been actually litigated; (3) it must have been determined to be a valid and final judgment; and (4) the determination must have been essential to the prior judgment." 602 F.2d at 608 quoting from *Haize v. Hanover Ins. Co.*, 536 F.2d 576, 579 (3rd Cir.1976). These are the same federal standards for collateral estoppel adopted in *Matter of Shuler*, 722 F.2d at 1256 n. 2, *Matter of Raiford*, 695 F.2d 521, 523 (11th Cir.1983); *Spilman v. Harley*, 656 F.2d 224, 228 (6th Cir.1981); *Matter of Merrill*, 594 F.2d 1064, 1067 (5th Cir.1979); and *Matter of Rice*, 18 B.R. 562 (Bkrtcy.N.D.Ala. 1982).

13. *Shuler* and *Allman* considered the "full faith and credit" to the state court judgment required by 28 U.S.C. § 1738. *Shuler* at 1258 n. 10; and *Allman* at 866 n. 3.

14. 28 U.S.C. § 1738, Para. 3 provides in relevant part:

Such Acts, records and judicial proceedings [of any State] ... shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken.

15. In *Marrese v. American Ac. of Orthopaedic Surg.*, —— U.S. ——, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985) the Court refused, "to create a special exception to § 1738 for federal antitrust claims that would give state court judgments greater preclusive effect than would the courts of the State rendering the judgment. Cf. *Haring v. Prosise*, 462 U.S. at [320], 103 S.Ct. at [2377]

[76 L.Ed.2d 595] (refusing to create special preclusion rule for § 1983 claim subsequent to plaintiff's guilty plea)." *Id.* at 1334. Similarly the Court held in *Migra v. Warren City School Dist. Bd. of Educ.*, 465 U.S. 75, 85, 104 S.Ct. 892, 898, 79 L.Ed.2d 56 (1984), on the authority of *Allen v. McCurry*, 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980), that federal civil rights actions under 42 U.S.C. § 1983 do not "override state preclusion law...." The Court qualified this rule in *McDonald v. City of West Branch, Mich.*, 466 U.S. 284, 104 S.Ct. 1799, 80 L.Ed.2d 302 (1984) by holding that, "in a § 1983 action, a federal court should not afford res judicata or collateral estoppel to effect an award in an arbitration proceeding brought pursuant to the terms of a collective bargaining agreement." *Id.* at 1804 (footnote omitted).

In *Kremer v. Chemical Const. Corp.*, 456 U.S. 461, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982) the Court compared section 1983 civil rights actions to Title VII of the Civil Rights Act of 1964 and reasoned that there was more in section 1983 to suggest an implied repeal of section 1738 than could be found in Title VII. Having earlier held that section 1983 does not override section 1738 the Court concluded that Title VII would also fall short of preempting section 1738. *Id.* at 476, 102 S.Ct. at 1894. The Eleventh Circuit used similar reasoning in *Hurt v. Pullman, Inc.*, 764 F.2d 1443 (11th Cir.1985) and applied the authority of *Migra* to hold that in a case under the Employment Retirement Income Security Act, 29 U.S.C. §§ 1001 *et seq.* where Alabama law of collateral estoppel required mutuality of parties, the plaintiff would not be barred in a later action against its ERISA funds trustee who was not in privity with the first. *Id.* at 1447 n. 4 and at 1451. *See also* note 18 below. Cf. *Key v. Wise*, 629 F.2d 1049 (5th Cir.1980), *cert. denied*, 454 U.S. 1103, 102 S.Ct. 682, 70 L.Ed.2d 647 (1981).

such cases, a federal court is required to look first to state preclusion law in determining the preclusive effects of a state court judgment.[16] This is at odds with the Fifth Circuit's declaration in *Matter of Merrill*, 594 F.2d 1066 n. 1, that "federal rules of collateral estoppel apply in bankruptcy proceedings. *Heiser v. Woodruff*, 327 U.S. 726, 732, 66 S.Ct. 853, 855, 90 L.Ed. 970, 975 (1946)." [17]

The case now before this Court meets the requirements of both the federal rule and the state rule for the application of collateral estoppel. The only difference is that Alabama requires mutuality of parties which is no longer required by the federal rule in some circumstances.[18] There is mutuality of parties in this case.

The Cashes' state court judgment also has issue preclusive effect by giving it the full faith and credit required by 28 U.S.C. § 1738 unless that section's application to bankruptcy dischargeability cases has been expressly or impliedly excepted in some federal statute. In giving collateral estoppel effect under section 1738 to a Kansas default judgment where Kansas accords such effect to its default judgments, Judge Keith M. Lundin wrote in *In re Byard*, 47 B.R. 700, 707 (Bkrtcy.M.D.Tenn.1985):

> There is no compelling statement of federal bankruptcy law which expressly or impliedly excepts to the normal operation of § 1738 where the state court judgment for which issue preclusive effect is sought is a default judgment. The implied repealer of § 1738 in bankruptcy proceedings recognized by the Supreme Court in *Brown* and acknowledged by the Supreme Court in *Marrese* was restricted by the Supreme Court in *Brown* to *claim* preclusion. Since the decision in *Brown*, the implied repealer exception to § 1738 has been narrowly construed by the Supreme Court. *See, e.g., Kremer*, 456 U.S. at 468–469, 102 S.Ct. at 1890–1891.

> There is nothing about the issues here sought to be precluded which suggests intervention of any strong federal bankruptcy policy prohibiting application of § 1738. Fraud, conversion and misapplication of funds are issues well within the regular competence and experience of state courts. Under these circumstances, it is the holding of this court that there is no compelling statement of federal bankruptcy law which would expressly or impliedly forbid application of § 1738 to give issue preclusive effect to this default judgment.

In the absence of any countervailing-statutory expression by Congress, this Court has no alternative to applying to the state court judgment the full faith and credit required by 28 U.S.C. § 1738.

---

**16.** "It is now settled that a federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Migra v. Warren City School Dist. Bd. of Educ.*, 465 U.S. 75, 81, 104 S.Ct. 892, 896, 79 L.Ed.2d 56 (1984).

**17.** *See also Matter of Raiford*, 695 F.2d 521, 523 (11th Cir.1983), where federal standards were applied; and *Matter of Shuler*, 722 F.2d 1253, 1256 (5th Cir.1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 85, 83 L.Ed.2d 32 (1984), and *Spilman v. Harley*, 656 F.2d 224, 228 (6th Cir.1981), where federal standards were adopted in rejecting collateral estoppel.

**18.** Alabama's requirements of mutuality are discussed in: *Wheeler v. First Ala. Bk. of Birmingham,* 364 So.2d 1190, 1199 (Ala.1978); *Fisher v. Space of Pensacola, Inc.,* 461 So.2d 790, 792 (Ala.1984); *Little v. Pizza Wagon, Inc.,* 432 So.2d 1269, 1274 (Ala.1983); and *Hurt v. Pullman,* Inc., 764 F.2d 1443, 1450–1451 (11th Cir.1985). *See also* Comment, *Issue Preclusion in Alabama,* 32 Ala.L.Rev. 500 (1981).

Federal requirements are found in: *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 331, 99 S.Ct. 645, 651, 58 L.Ed.2d 552 (1979) (where collateral estoppel was used offensively to prevent the defendants from relitigating in a stockholders suit the issues that had been resolved against them in an earlier suit by the SEC in which the proxy statement had been found to be materially false and misleading); and *Blonder-Tongue Lab., Inc. v. University of Illinois Found.,* 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971) (patentee not permitted to sue on his patent after it had once been held invalid following opportunity for full and fair trial). *See also Spilman v. Harley*, 656 F.2d 224, 228 (6th Cir.1981); and *Matter of Merrill*, 594 F.2d 1064, 1067 n. 4 (5th Cir.1979).

The most that can be said for Mrs. Armstrong is that the evidence before this Court did not clearly and convincingly prove that she knew the representations were false when she made them. Mrs. Armstrong did not testify on the dischargeability hearing. Whether she testified on the trial in the state court is not known. It is clear from the parts of the state court record before this Court that the jury found against her on issues so framed by the state court as to be identical with those required to except the Cashes' judgment from her discharge—issues which could not have been decided without resolving them.[19]

Is this Court to decide now that the state court was wrong when it decided there was enough evidence to submit the case to the jury as to Mrs. Armstrong?[20] If so, on what basis? There is no more before this Court to show that the state court was wrong in that decision than there is to show it was right. If the state court judgment establishes nothing more than a *prima facie* case of nondischargeability as the Ninth Circuit holds, the Armstrongs have presented no evidence to refute it. They have not suggested that they had less than a full and fair opportunity to litigate the issues in the state court, or that they lacked the incentive to do so. They were represented by able counsel in the state court and on the dischargeability hearing. Bankruptcy courts have no peculiar claim to expertise in determining fraud issues under Alabama law. In these circumstances, to require the examination or resubmission of all of the evidence heard by the state court as a condition for the application of collateral estoppel would rob the doctrine of its character and vitality and deny to the state court judgment the full faith and credit to which it is entitled.

"This court must tailor its application of collateral estoppel to the circumstances of the case before it." *Matter of Halpern,* 50 B.R. 260, 262 (Bkrtcy.N.D.Ga.1985). The competing principles clamoring for recognition in this case cannot all be given priority. The debtor's discharge is favored, and so is the finality and conclusiveness of judgments and judicial economy. *Brown v. Felson* tells us that Congress committed the decision of dischargeability issues exclusively to bankruptcy courts; however, "that Congress intended the bankruptcy court to determine the final result—dischargeability or not—does not require the bankruptcy court to redetermine all the underlying facts." *Spilman v. Harley,* 656 F.2d 224, 227 (6th Cir.1981).

 Balancing the applicable principles of law in the circumstances of this case, the Court concludes that the Cashes' state court judgment is entitled to preclusive effect in determining the exception sought to the Armstrongs' discharge.

Judgment will be entered accordingly.

---

**19.** *See generally, Matter of Raiford,* 695 F.2d at 523, which details the three-prong test for application of collateral estoppel.

**20.** The Armstrongs moved, at the close of the plaintiffs' case in the state court trial, for a directed verdict based on insufficiency of the evidence. Their motion was denied. They also moved for a directed verdict at the close of all of the evidence. That motion was also denied.