**In the Matter of James Harold DENNIS, Sr., Debtor.**

**CPI OIL & REFINING, INC., Plaintiff,**

**v.**

**James Harold DENNIS, Sr., Defendant.**

**Bankruptcy No. 86–3343.**
**Adv. No. 86–0484.**

United States Bankruptcy Court,
N.D. Alabama, S.D.

March 16, 1987.

Memorandum Opinion Regarding Amount of Debt That Is Not Dischargeable
July 6, 1987.

Robert M. Echols, Jr., Birmingham, Ala., for debtor.

Macbeth Wagnon, Jr., Mark P. Williams, Birmingham, Ala., for plaintiff.

M. Charles Sterne, Birmingham, Ala., trustee of the Estate of James Harold Dennis, Sr.

## MEMORANDUM OPINION

CLIFFORD FULFORD, Bankruptcy Judge.

Relying on Sections 523(a)(2)(A), (4) and (6) of the Bankruptcy Code,[1] CPI Oil & Refining, Inc. ("CPI") seeks a summary judgment excepting its civil fraud judgment against Debtor from his discharge. Pursuant to 28 U.S.C. § 157(b)(3), this is a core proceeding. 28 U.S.C. § 157(b)(2)(I).

On May 12, 1982, James Harold Dennis, Sr., the Debtor, pleaded guilty to having devised a scheme and artifice to defraud and to obtain money and property of CPI by means of his false and fraudulent pretenses, representations and promises made by interstate telephone communication in violation of 18 U.S.C. § 1343.[2] The guilty plea was entered on the third day of a trial before Judge Clarence W. Allgood of the United States District Court for the Northern District of Alabama. Before permitting Dennis to change his plea to guilty, Judge Allgood meticulously followed the litany required to determine that the plea of guilty was being voluntarily and understandingly entered. Mr. Dennis was represented by two able lawyers experienced in criminal trials.

At Judge Allgood's direction, the Assistant United States Attorney prosecuting the case stated what he expected the remaining witnesses to testify:

MR. BARNETT: Briefly, if the Court please, we would establish that from a period of time dating back in 1980 Mr. Dennis was buying fuel and selling it on the wholesale market at a loss, that he could not get an accountant to give him an audited or an unaudited financial statement on the business he was conducting at Metro Energy because the mere creation of a financial statement carries with it the general accounting principle that it's an on-going, profitable business and we would have testimony that Mr. Dennis was not working a profitable business, that he was selling at a loss and that the best explanation he ever gave to anyone was that he planned some time in the future to renegotiate these prices at some point in time with Bill Allen or whomever was supplying him the fuel, that having rendered a financial statement in March, dated March 31, 1981, which he created from one that he had gotten from Mr. Aderholt, that financial statement was created as a figment of his own imagination without regard to the financial status of the company.

While Mr. Aderholt never did an audited statement on the accounts at Metro Energy, he would testify that the content and the representations in the financial statement that's dated March 31 bears no semblance at all to the financial posture of Metro Energy Company. Haven (sic) gotten an extension of credit and a hundred thousand dollar line from Beaumont Oil, James Dennis then in full execution of his plan on August the 8th called Billy Joe Wells and told him he had fifteen thousand barrels of fuel obligated to him and they needed to start pulling immediately.

He had no such purchase rights from Beaumont Oil. Indeed at that date and that time, he was already over his credit limit that he knew to be one-hundred thousand, that based on the acivities (sic)

---

1. *11 U.S.C. § 523(a).* A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—
(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained, by—
　(A) false pretenses, a false representation, or actual fraud ...;
(4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny;
(6) for willful and malicious injury by the debtor to another entity or to the property of any other entity;

2. *18 U.S.C. § 1343* reads as follows:

*Fraud by wire, radio, or television.* Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined not more than $1,000 or imprisoned not more than five years, or both.

then of Billy Joe Wells, who was not a participant in this anyway criminally but certainly was pulling all the fuel he could get in line with the directions he got from Mr. Dennis, caused a loss to the company, to Beaumont Oil combined with the trucks that Mr. Dennis had coming in there on his own of over a million dollars.

All of that fuel was sold at a loss if Mr. Dennis had been paying for it. Certainly it was considerably less than what had been priced to him that would have been required to be paid had he intended to pay it.

Then on August the 11th when Beaumont Oil discovered how they had been hit over the weekend period, in a telephone conversation to Mr. Dennis in an agreement not to cut him off, he agreed not to pull anymore fuel. After that agreement was reached—He had also promised to fly out there—He flew out to Beaumont, Texas the next day but in the interim period he never slacked his pulling of fuel and continued to operate his trucks and other trucks under his direction in the same pattern he had throughout the weekend which ultimately caused the loss to the company at that point to be a $1,115,304.67.

Now, after that period of time, he did make some restitution and he finally did get the price down to eight hundred sixty-five thousand three hundred some odd dollars. Of course, there's a civil suit pending against him at this time and the victim of this scheme has frozen assets, certain assets of Mr. Dennis somewhere in the area of about $150,000 that's in the clerk's office subject to claims of other creditors but that has not been resolved, but we think at that point the evidence would show that Mr. Dennis when he got through the weekend his scheme had reached fruition.

Dennis pleaded guilty immediately thereafter and was sentenced. He and one of his attorneys agreed that the sentence was the exact plea bargain.

CPI thereafter tried its suit for damages against Dennis in the United States District Court for the Northern District of Alabama before Judge William M. Acker, Jr., on civil fraud issues arising out of the same operative facts on which the criminal case was based. In September of 1983, the jury returned a verdict in favor of CPI and against Dennis for $866,474.01 compensatory damages and $60,000.00 punitive damages, and judgment was entered on that verdict. Mr. Dennis was represented by counsel in that civil suit, but he did not personally appear. He was serving his prison sentence at the time of the trial and claims that he was financially unable to finance his attendance at the trial even if he had been permitted to do so.

CPI claims that the plea and finding of guilty in the criminal case before Judge Allgood and the jury verdict and judgment in the civil case before Judge Acker entitles it to a summary judgment excepting its judgment from Dennis' discharge.

Mr. Dennis argues that his plea of guilty should not preclude the bankruptcy court's consideration of the circumstances under which the plea was entered and its independent determination of the issue of dischargeability. He disclaims any actual guilt for the fraud charged. He says that at the time the criminal case was tried before Judge Allgood, he was serving time given him by Judge James Hancock of the United States District Court for the Northern District of Alabama in an earlier criminal case charging him with mail fraud under 18 U.S.C. § 1341. He testified that during the trial of the criminal case before Judge Allgood, a witness for the Government committed provable perjury, and that Mr. Barnett, the Assistant United States Attorney prosecuting the case, came to his lawyers and offered such an attractive alternative through plea bargaining that he could not turn it down. The sentence imposed by Judge Allgood ran concurrently with the sentence he was then serving, and he said that it added only a few months to the time he had to serve on the sentence imposed by Judge Hancock. He also testified that the Government gave him certain tax benefits in the plea bargaining that resulted in his plea of guilty before Judge Allgood.

The record of the change of plea and sentence proceedings does not show that Dennis and his attorneys requested Judge Allgood to accept a plea of *nolo contendere.*[3]

The Eleventh Circuit's decision in *Matter of Raiford,* 695 F.2d 521 (11th Cir.1983), answers and disposes of Dennis' arguments and compels the conclusion that his debt to CPI, whatever it is, is not dischargeable.[4] Mr. Dennis' counsel seeks to distinguish *Raiford* by pointing out that the plea of guilty there was to bankruptcy fraud. It is a difference without a distinction.

■ *Raiford* stands for the broader principle that a debtor who pleads guilty in a criminal case to fraudulent acts having issues in common with those involved in determining his dischargeability is collaterally estopped and due to have summary judgment rendered against him in the bankruptcy discharge case.

Dennis' plea of guilty in the criminal case before Judge Allgood precludes his contesting here that he was indebted to CPI in some amount and that Section 523(a)(2)(A) excepts that debt from discharge.

The plea of guilty in the interstate wire fraud case does not preclude Dennis from questioning the amount of his debt to CPI because the amount was not in issue in that criminal case.[5] CPI contends that the amount was in issue and fixed in the civil trial before Judge Acker, and that Dennis is precluded by the civil judgment from contesting the amount in this adversary proceeding to determine dischargeability. If Dennis had personally participated in that civil trial, issue preclusion could very well apply. *See and cf. Matter of Arm-*

*strong,* 54 B.R. 399, 13 B.C.D. 859 (Bkrtcy N.D.Ala.1985). However, Dennis argues that the amount of his debt is material to his rehabilitation under the Bankruptcy Code, and that if he had been personally present at the trial before Judge Acker, he could have pointed out, as he insists he has a right to do here, that the amount of the debt is less than CPI claimed and the jury's verdict established.

CPI points out that Dennis was represented by his attorney in the trial of the civil case before Judge Acker, and his personal presence was not required for issue preclusion to apply. Insisting on the principle that favors finality of judgments, CPI is fearful that its personnel who testified to its damages before Judge Acker may no longer be available or, if available, may not be able to recall the details of the damages to which they testified.

Only CPI's Complaint, the Clerk's Court Minutes dated September 16, 1983, and the Certificate of Judgment in the civil case tried before Judge Acker have been exhibited with CPI's motion for summary judgment. CPI's counsel has informed the Court that the testimony before Judge Acker has not been transcribed. In the transcript of the plea and sentence proceedings before Judge Allgood, the prosecuting attorney is recorded as having referred to restitution made by Mr. Dennis. And while it is a matter of minor importance, CPI levied on its judgment and the United States Marshal seized some items of Mr. Dennis' jewelry to which CPI is entitled and which value must be accounted for in determining the amount of the judgment balance not discharged.

If a case like this has been reported, research has not revealed it. *Brown v.*

---

**3.** *In Matter of Raiford,* 695 F.2d 521 at 523 (11th Cir.1983), the Court pointed out that a federal criminal defendant wishing to avoid both a trial and any collateral estoppel effect could ask for court permission to plead *nolo contendere;* and that a defendant who failed to do so could not argue later that the lack of a contested trial renders his plea ineffective for collateral estoppel purposes.

**4.** The debtor in *Raiford* also claimed that he pled guilty only because the prosecutor agreed to recommend a lighter sentence than he might

have received had the case gone to trial. *Id.,* 695 F.2d at 524. With respect to the validity of guilty pleas induced by opportunity to limit the possible penalty, see *North Carolina v. Alford,* 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970).

**5.** *See and cf. Commissioner v. Sunnen,* 333 U.S. 591, 68 S.Ct. 715, 92 L.Ed. 898 (1948); *United States v. Guzzone,* 273 F.2d 121 (2d Cir.1959); and *Moore v. United States,* 360 F.2d 353 (4th Cir.1966).

*Felsen,* 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979), does not answer the issue here presented. It was concerned with the issue of dischargeability, not the amount of the non-dischargeable debt. It clearly tells us that res judicata should not blockade "unexplored paths that lead to truth"[6] or foreclose the debtor in the determination of dischargeability issues. To Mr. Dennis, who has paid his debt to society for his criminal transgressions and who now seeks his fresh start in bankruptcy, the amount of the non-dischargeable debt is of importance just behind the issue of dischargeability which has been determined against him. Even if discharge is limited to the "honest but unfortunate debtor",[7] there is no policy in bankruptcy which holds the dishonest debtor to a non-dischargeable debt that is greater than his creditor's due.

CPI is entitled to a partial summary judgment that Mr. Dennis' debt to it is not dischargeable. CPI still bears the burden of proving the non-dischargeable amount before final judgment can be entered. Mr. Dennis should provide CPI with his written contentions about the amount of his debt, and CPI should respond to his contentions in such a way as to define and limit the issues on the final hearing for determination of damages.

A separate order is being entered accordingly.

## MEMORANDUM OPINION REGARDING AMOUNT OF DEBT THAT IS NON–DISCHARGEABLE

On March 16, 1987, the Court granted partial summary judgment for CPI Oil & Refining, Inc. ("CPI") that Debtor's debt to it was non-dischargeable in an amount to be determined. A hearing was held on April 20, 1987 to fix the amount of the debt that is non-dischargeable.

The findings of fact and conclusions of law stated in the Court's Memorandum Opinion of March 16, 1987 are here adopted and augmented on the basis of the evidence admitted at the hearing of April 20, 1987. As required by 28 U.S.C. § 157(b)(3), the Court determines that this is a core proceeding. 28 U.S.C. 157(b)(2)(I).

CPI contends that its judgment in the civil action before Judge William M. Acker, Jr., establishes the non-dischargeable nature *and amount* of the debt under the principle of res judicata. Mr. Dennis contends that CPI had given his company, Metro Energy, Inc., a $100,000 line of credit, and that to the extent he pulled fuel up to $100,000, that much of the judgment against him should be discharged. This dispute requires a look at the parts of the record of the civil case before Judge Acker that CPI brought before this bankruptcy court to sustain its complaint seeking a declaration of non-dischargeability.

The entire record of the civil case before Judge Acker has not been produced here. Only CPI's complaint, the clerk's court minutes and certificate of judgment, and the transcript of Paula Young's testimony with exhibits have been seen by this bankruptcy court.

The complaint charged Dennis with having obtained the $100,000 line of credit by furnishing false financial statements on which CPI relied. This would be enough to except the $100,000 from discharge if the elements of Section 523(a)(2)(B) of the Bankruptcy Code had been proved either before Judge Acker or this bankruptcy court. The trouble is that there was no evidence on the dischargeability hearing to sustain that charge, and the part of the proceedings in the case before Judge Acker received in evidence did not address it.

The principal thrust of CPI's case against Dennis was that he made unauthorized withdrawals of over 1,000,000 gallons of motor fuel without any intention of paying for them.[1] However, CPI's complaint before Judge Acker charged that these ac-

---

**6.** 442 U.S. at 132, 99 S.Ct. at 2210.

**7.** 442 U.S. at 128, 99 S.Ct. at 2208, citing *Local Loan Co. v. Hunt,* 292 U.S. 234, 54 S.Ct. 695, 78 L.Ed. 1230 (1934).

**1.** This charge falls under Section 523(a)(2)(A).

celerated withdrawals of fuel occurred "at a time when Metro Energy was already indebted to CPI for motor fuel withdrawn by Metro Energy in an amount at or near the established credit limit...." CPI thus seems to concede, in its complaint before Judge Acker, that the first $100,000 of its loss was not caused by Dennis' fraudulent lifting of motor fuel.

■ Judge Acker did not have the issue of dischargeability before him. That alone distinguishes the cases cited by CPI in support of the application of res judicata.[2] Res judicata applies only if the present issue was or could have been resolved in the prior suit.[3] The judgment rendered by Judge Acker is res judicata as to the amount of Dennis' debt to CPI, but it does not acquit the bankruptcy court of its duty, imposed by the Supreme Court in *Brown v. Felsen*, 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979), to inquire behind that judgment to determine dischargeability.

The Fifth Circuit Court of Appeals wrote in *Matter of Cross*, 666 F.2d 873 at 879–880 (1982):

> The overriding purpose of the bankruptcy laws is to provide the bankrupt with comprehensive, much needed relief from the burden of his indebtedness by releasing him from virtually all his debts. [Citing cases.] To this end, the courts have narrowly construed exceptions to discharge against the creditor and in favor of the bankrupt. [Citing cases.] Accordingly, the burden of proof lies with the creditor to demonstrate that the particular debt falls within one of the statutory exceptions. [Citing cases and authorities.]

CPI has failed in its burden to prove that the first $100,000 of Dennis' debt to it is non-dischargeable. Accordingly, the first $100,000 of the compensatory damages included in the judgment rendered by Judge Acker is declared to be dischargeable and discharged by Mr. Dennis' discharge dated August 7, 1986.

One other matter remains before the amount of the non-dischargeable debt can be computed. CPI levied on certain items of jewelry owned by Dennis. After the hearing of April 20, 1987, counsel for the contending parties and the Trustee communicated an agreement which the Court considers reasonable and now approves. Under this agreement, CPI will keep the diamond ring for which it will allow a credit of $20,000. All other items of jewelry, i.e., a watch, gold piece and chain, and one dollar gold piece ring, will be turned over to Mr. Dennis as property claimed by him to be exempt.

Putting all of this together, Mr. Dennis' non-dischargeable debt to CPI is calculated as follows:

Judgment, CV 81–AR–1334–S, dated 9–16–83:

| | |
|---|---|
| Compensatory Damages | $866,474.01 |
| Less | (100,000.00) |
| | 766,474.01 |
| Punitive Damages | 60,000.00 |
| | $826,474.01 |
| Plus Costs taxed 10–3–83 | $ 1,262.50 |
| Less credit ordered by Dist Ct. | (157,263.55) |
| **Total Principal Non–Dischargeable Debt** | $670,472.96 |

In addition, CPI is entitled to interest on the non-dischargeable principal debt computed as provided in 28 U.S.C. § 1961 from

---

**2.** *Federated Department Stores, Inc. v. Moitie,* 452 U.S. 394, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981) (relitigation of unappealed adverse judgment barred by res judicata even though judgment rested on overruled principle and similar actions were successfully appealed); *Birmingham Trust Nat. Bank v. Case,* 755 F.2d 1474 (11th Cir.1985) (the debt, and not the value of the collateral, is non-dischargeable); *In re Comer,* 723 F.2d 737 (9th Cir.1984) (default judgment in state court for unpaid alimony and child support held res judicata as to amount for purpose of dischargeability); and *Ray v. Tennessee Valley Authority,* 677 F.2d 818, 821, reh. and reh. en banc denied, 683 F.2d 1375 (11th Cir.

1982), *cert. den.* 459 U.S. 1147, 103 S.Ct. 788, 74 L.Ed.2d 994 (1983) (denial of plaintiff's reemployment by Civil Service Commission was res judicata as to his breach of contract claim against TVA).

**3.** *See, e.g., Nevada v. United States,* 463 U.S. 110, 129–130, 103 S.Ct. 2906, 2918, 77 L.Ed.2d 509, reh. denied 464 U.S. 875, 104 S.Ct. 210, 78 L.Ed.2d 185 (1983); *N.L.R.B. v. Master Slack and/or Master Trousers,* 773 F.2d 77, 81 (6th Cir.1985); and *Ray v. Tennessee Valley Authority, supra,* n. 2.

September 16, 1983 until paid. The $20,000 allowed for the diamond ring, will be credited by CPI against interest due.

A separate order will be entered.