**In re Dean Ralph RUBITSCHUNG, Debtor.**

**Clarence C. COUCH, Plaintiff,**

v.

**Dean R. RUBITSCHUNG, Defendant.**

**Bankruptcy No. 282–00528.
Adv. No. 282–0198.**

United States Bankruptcy Court, C.D. Illinois, Danville Division.

April 6, 1988.

Brian L. McPheters, Champaign, Ill., for plaintiff.

Dean R. Rubitschung, pro se.

## OPINION

GERALD D. FINES, Bankruptcy Judge.

This case is before the Court for trial on the Complaint to Declare an Exception to Discharge in Bankruptcy filed on October 6, 1982, by the Plaintiff, Clarence E. Couch (Couch), pursuant to 11 U.S.C. § 523(a)(6),

alleging that on March 27, 1981, the Debtor, Dean R. Rubitschung (Rubitschung), violently assaulted Couch without cause or provocation resulting in the Plaintiff sustaining serious physical injuries.

Couch had filed a state court action in the Champaign County Circuit Court on August 21, 1981, and on November 8, 1983, the Honorable Larry Lessen entered an order lifting the automatic stay and allowing the state court action to proceed to trial. A default judgment was entered against the Debtor in the sum of $65,150 for compensatory damages and $25,000 for punitive damages. No appeal was taken from the default judgment.

Couch filed a Motion for Summary Judgment herein on February 11, 1988, with oral arguments heard February 19, 1988. This Court denied the Plaintiff's Motion for Summary Judgment on March 7, 1988.

At trial, Rubitschung appeared *pro se*. The Court admonished the Debtor as to his rights and cautioned him that the Court would not consider any matters not in evidence.

Only three witnesses testified at trial, including the Plaintiff, the Debtor, and the Plaintiff's former spouse, Rita Couch. Couch testified that on March 28, 1981, he was in the Tumble Inn in Champaign, Illinois, when he first observed Rubitschung. Couch testified that he never said anything insulting or provocative to the Debtor and "never laid a hand on the Defendant." Both Couch and the Debtor left the tavern together and went to a patio area to the rear of the tavern to talk.

At this point, Couch says that the Debtor hit him with a bottle or some other object. The Plaintiff was struck above the left eye and was rendered unconscious. Couch was subsequently hospitalized for three to three and a half days. Couch admits to consuming some six beers between 6:30 p.m. and 11:30 p.m., but denies having any other alcoholic beverages.

Rita Couch testified that she and the Plaintiff drove in the Plaintiff's car to the Tumble Inn and were together all evening. Ms. Couch substantiates her former husband's testimony and specifically testified that she saw no physical contact between Couch and Rubitschung in the tavern nor saw the Plaintiff threaten the Debtor in any way.

Ms. Couch further testified that she saw Couch and the Debtor leave the tavern and go outside to the front of the building. When she looked outside again and didn't see them, she walked out back of the tavern and saw the Plaintiff on the ground unconscious. Ms. Couch testified that she took Couch home and then to the hospital because of his injuries.

Ms. Couch says that, when she saw the Plaintiff on the ground, his face was a mass of blood and there was a broken beer bottle with blood on it next to him. At the hospital, she said she observed the Plaintiff with bruises on his legs and body and that his head was swollen the size of a basketball.

The Debtor was called as part of the Plaintiff's case-in-chief. During this testimony, the Debtor acknowledged that he was at a tavern known as the Dodge House on March 27, 1981, and asked for and was given a rag by a bartender to clean blood off his hands and that he had told the bartender that he had just "kicked the shit out of Clarence Couch."

Despite the Court's admonishments to the Defendant that it was incumbent upon him to present his own evidence, the Defendant rested without presenting any testimony. The Plaintiff made a Motion for Directed Verdict, which was denied by the Court.

Title 11 U.S.C. § 523(a)(6) denies discharge for willful and malicious injury by the debtor to another entity or to the property of another entity. Therefore, Plaintiff must prove (1) a willful and malicious act (2) done without cause (3) which leads to harm. *In re Hallahan*, 78 B.R. 547, 550 (Bankr.C.D.Ill.1987).

While there is no universally accepted definition of the term "willful and malicious," this Court concludes that willful and malicious conduct is the deliberate or intentional act of a debtor with knowledge

that the act will harm another. *In re Roemer*, 76 B.R. 126, 128 (Bankr.S.D.Ill. 1987); *In re Hallahan, supra* at 550. Thus, "malicious" means a wrongful act done consciously and knowingly in the absence of just cause or excuse. *In re Bossard*, 74 B.R. 730, 736 (Bankr.N.D.N.Y. 1987); *In re Condict*, 71 B.R. 485, 487 (Bankr.N.D.Ill.1987). It is not necessary for the debtor to act with ill will or malevolent purpose toward the injured party. *Hallahan, supra,* at 550.

 The Court has previously ruled on the issue of the dischargeability of the state court award of $25,000 under amended Count II for punitive damages. Inasmuch as the $25,000 award was punitive in nature and in no way altered the extent of the damages for money obtained for actual damages, the Court must deny that portion of the Plaintiff's case which relates to the punitive damages issue. See: *In re Suter*, 59 B.R. 944, 946–947 (Bankr.N.D.Ill.1986).

Section 523(a)(6) provides:

"(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title ... does not discharge an individual debtor from any debt—

.    .    .    .    .

(6) for willful and malicious injury by the debtor to another entity or to the property of another entity;"

Debts which are based on the traditional intentional torts, such as assault and battery are non-dischargeable under § 523(a)(6). *In re Cunningham*, 59 B.R. 743 (Bankr.N.D.Ill.1986). Even if Couch provoked Rubitschung, any liability arising out of this incident is exempted from discharge. *See: In re Sturtevant*, 49 B.R. 310 (Bankr.D.Mass.1985). Based upon the trial record, the Court can only conclude that the Debtor's actions were willful and malicious in the present case. The Court cannot speculate as to what evidence may have been adduced at trial had the Debtor been represented by counsel or otherwise presented a competent defense.

Therefore, the Court finds that the Plaintiff has established through clear and convincing evidence that the Debtor's assault and battery against the Plaintiff on March 28, 1981, was both willful and malicious as those terms are defined under § 523(a)(6), and the debt arising from Debtor's conduct on March 28, 1981, is NON–DISCHARGEABLE.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.