In re Malcolm McGUFFEY a/k/a
Wally Mack, Debtor.

Susanne LITTLEFIELD, Plaintiff,

v.

Malcolm McGUFFEY, Defendant.

Bankruptcy Nos. 91 B 08924, 91 A 00834.

United States Bankruptcy Court,
N.D. Illinois, E.D.

Sept. 30, 1992.

Leonard Groupe, Bruce Katz, Chicago, Ill., for plaintiff.

Joel Schechter, Grossman Mitzenmacher & Schechter, Chicago, Ill., for debtor, defendant.

## MEMORANDUM OPINION

DAVID H. COAR, Bankruptcy Judge.

This matter comes before the Court on Plaintiff's Motion for Summary Judgment on a Complaint to Determine the Dischargeability of Debt. The Court, having reviewed the record, the memoranda of law submitted by the parties, and the applicable law, now rules as follows.

## PROCEDURAL BACKGROUND AND FINDINGS OF FACT

Susanne Littlefield [Littlefield], the Plaintiff in this adversary proceeding, is a judgment creditor of the Debtor/defendant Malcolm McGuffey, a/k/a Wally Mack [McGuffey]. McGuffey's debt to Littlefield

arises from a judgment entered in Littlefield's favor on July 26, 1990, in the District Court for the Northern District of Illinois [district court judgment], where Littlefield had sued McGuffey for violations of civil rights law, violations of fair housing law, and intentional infliction of emotional distress. Littlefield seeks to have her judgment debt determined nondischargeable pursuant to § 523(a)(6) of the Bankruptcy Code. Section 523(a)(6) excepts from discharge debts "for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6).

The facts underlying Littlefield's district court lawsuit against McGuffey are set forth in the opinion of District Judge Ann C. Williams, denying McGuffey's motions for judgment notwithstanding the verdict and a new trial. *Littlefield v. Mack*, 750 F.Supp. 1395 (N.D.Ill.1990). These facts are briefly summarized as follows. In September, 1988, McGuffey, who is white and owns several apartment buildings, agreed to lease an apartment to Littlefield, who is also white. Littlefield was to occupy this apartment with her daughter Shaunte and her sister Sandra. Littlefield paid a security deposit and received a key to the apartment. She cleaned and painted the apartment and moved various personal belongings into it.

Approximately two weeks after agreeing to rent the apartment to Littlefield, McGuffey learned that Littlefield's boyfriend, who is also the father of Littlefield's child, is black. McGuffey then informed Littlefield that she could not rent the apartment. McGuffey removed Littlefield's belongings from the apartment and changed the locks. In addition, according to the testimony of Littlefield and at least seven other witnesses, McGuffey began a campaign of harassment and intimidation against Littlefield. He reportedly telephoned Littlefield at home and spewed racial invectives at her. He made similarly harassing and racially abusive telephone calls to Littlefield's sister, Kathleen Gutierrez, and even visited Gutierrez's home on one occasion. Finally, McGuffey discovered the location of Littlefield's new apartment and pinned a note containing a death threat against her boyfriend to her door.

Littlefield's lawsuit in federal district court alleged that McGuffey's conduct violated 42 U.S.C. §§ 1982, 3604, 3613, and 3617, as well as constituting intentional infliction of emotional distress under Illinois common law. Section 1982, which was enacted as part of the Civil Rights Act of 1866, provides that "[a]ll citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property." 42 U.S.C.A. § 1982 (West 1981). Sections 3604, 3613, and 3617 are part of the Fair Housing Act, which was enacted as Title VIII of the Civil Rights Act of 1968. Section 3604 prohibits various forms of discrimination in the sale or lease of residential property, while § 3617 prohibits coercion or intimidation of any person attempting to exercise or enjoy fair housing rights. Section 3613 provides a private right of action for Fair Housing Act violations. 42 U.S.C.A. §§ 3640, 3613, 3617 (West Supp.1991).

The jury found in favor of Littlefield and awarded her compensatory damages in the amount of $50,000 and punitive or exemplary damages in the amount of $100,000. In addition, after denying McGuffey's motions for judgment notwithstanding the verdict and a new trial, Judge Williams awarded attorneys' fees and costs in the amount of $174,002.36 to Littlefield as the prevailing party on her federal claims.

Littlefield filed a Complaint to Determine the Dischargeability of Debt, requesting this Court to find the entire judgment debt of $324,002.36 nondischargeable under § 523(a)(6). Littlefield asserts that the jury verdict and district court judgment collaterally estop McGuffey from disputing that the judgment debt is a debt for a "willful and malicious injury" within the meaning of § 523(a)(6). Littlefield therefore moves for the entry of summary judgment on her Complaint. McGuffey denies that the district court judgment has collateral estoppel effect in this proceeding and opposes the summary judgment motion.

In addition, McGuffey argues that even if the judgment debt is a debt for "willful and malicious injury" under § 523(a)(6), the portions of the judgment representing punitive damages and attorneys' fees are nevertheless dischargeable.

## CONCLUSIONS OF LAW

I.  *Nondischargeability Under § 523(a)(6)*

Rule 56(c) of the Federal Rules of Civil Procedure, which applies to bankruptcy adversary proceedings pursuant to Bankruptcy Rule 7056, states that a motion for summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The primary purpose of summary judgment is to avoid unnecessary trials in cases where no material factual issues are in dispute. *Wainwright Bank & Trust Co. v. Railroadmens Fed. Saving and Loan Ass'n*, 806 F.2d 146, 149 (7th Cir.1986).

Littlefield argues that summary judgment is appropriate in this case because the district court judgment conclusively resolved all of the factual issues necessary to establish that the judgment debt is nondischargeable under § 523(a)(6). She asserts that McGuffey is collaterally estopped from denying that the judgment debt is a debt for a "willful and malicious injury" to Littlefield. She therefore concludes that no material factual issues are in dispute, and that she is entitled to judgment as a matter of law.

In order to evaluate Littlefield's arguments, the Court must first examine the elements of a nondischargeability claim under § 523(a)(6), as well as the applicability of collateral estoppel doctrine to bankruptcy dischargeability proceedings. The Court may then apply the law to the facts of this case.

A.  Section 523(a)(6)

█  Section 523(a)(6) of the Bankruptcy Code provides that a general discharge of debts in bankruptcy does not discharge a debtor from any debt "for willful and malicious injury by the debtor to another entity or the property of another entity." 11 U.S.C. § 523(a)(6). The policy behind § 523(a)(6) is to preserve the benefits of bankruptcy's "fresh start" for the honest debtor, not the malicious wrongdoer. *United Bank of Southgate v. Nelson*, 35 B.R. 766, 776 (N.D.Ill.1983). In order to establish that a debt is nondischargeable under § 523(a)(6), a creditor must prove that the act giving rise to the debt was *both* willful *and* malicious. *In re Kimzey*, 761 F.2d 421, 424 (7th Cir.1985); *Southgate*, 35 B.R. at 768.

█  The legislative history of § 523(a)(6) defines the term "willful" as "deliberate or intentional." H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 365 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6320 (*cited in In re Scotella*, 18 B.R. 975, 977 (Bankr. N.D.Ill.1982)). Courts have consistently used this definition of "willful" in determining whether a debt is nondischargeable under § 523(a)(6). *See, e.g., In re Scarlata*, 127 B.R. 1004, 1013 (N.D.Ill.1991); *In re Condict*, 71 B.R. 485, 487 (N.D.Ill.1987); *Southgate*, 35 B.R. at 768; *In re Grier*, 124 B.R. 229, 231 (Bankr.W.D.Tex.1991); *In re Iaquinta*, 98 B.R. 919, 924 (Bankr. N.D.Ill.1989).

█  Courts have been less consistent, however, in defining the term "malicious" for § 523(a)(6) purposes. Some courts have held that a debtor acts maliciously within the meaning of § 523(a)(6) only when he or she acts with *actual* malice, or with the specific intent to harm a creditor or a creditor's property. *See, e.g., Ohio Grain Co. v. Gentis*, 10 B.R. 209 (Bankr. S.D.Ohio 1981); *In re Meyer*, 7 B.R. 932 (Bankr.N.D.Ill.1981); *In re Hodges*, 4 B.R. 513 (Bankr.W.D.Va.1980). Other courts have held that *implied* or *constructive* malice is sufficient to support a finding of nondischargeability under § 523(a)(6). *Chrysler Credit Corp. v. Rebhan*, 842 F.2d 1257 (11th Cir.1988); *Southgate*, 35 B.R. 766. A "constructively malicious" act has been alternatively defined as an act which necessarily and predictably results in harm

to a creditor and is without just cause or excuse, *In re Cecchini*, 780 F.2d 1440 (9th Cir.1986); *In re Condict*, 71 B.R. 485 (N.D.Ill.1987); *Scarlata*, 127 B.R. 1004, or as an act committed in the face of knowledge (which may be inferred from surrounding circumstances) that harm to a creditor will result. *Southgate*, 35 B.R. 766; *In re Miceli*, 1991 WL 242981, 1991 Bankr. LEXIS 1655 (Bankr.N.D.Ill. Feb. 11, 1991); *In re Ries*, 22 B.R. 343 (Bankr. W.D.Wis.1982).

The Seventh Circuit has not yet defined the term "malicious" for § 523(a)(6) purposes. This Court is persuaded, however, that the more liberal definition of "malicious," which includes implied or constructive malice as well as actual malice, is the better definition. As the District Court for the Northern District of Illinois pointed out in *United Bank of Southgate v. Nelson*, this liberal definition is consistent with legislative history and judicial precedent. The court in *Southgate* discussed the United States Supreme Court case of *Tinker v. Colwell*, 193 U.S. 473, 24 S.Ct. 505, 48 L.Ed. 754 (1904), in which the Court examined § 17(a)(2) of the Bankruptcy Act of 1898, the predecessor to § 523(a)(6). Analyzing language virtually identical to the language in § 523(a)(6), the *Tinker* Court wrote:

> ... we think a wilful [sic] disregard of what one knows to be his duty, an act which is against good morals, and wrongful in and of itself, and which necessarily causes injury and is done intentionally, may be said to be done willfully and maliciously, so as to come within the exception.

*Tinker*, 193 U.S. at 487, 24 S.Ct. at 509 (*quoted in Southgate*, 35 B.R. at 769). This language suggests that implied or constructive malice was sufficient to support a claim of nondischargeability under the predecessor statute to § 523(a)(6). In fact, according to the court in *Southgate*, subsequent courts did interpret *Tinker* as holding that the term "malicious" encompassed implied or constructive malice as well as actual malice. *Southgate*, 35 B.R. at 769. Courts in subsequent cases also read *Tinker* to hold that the term "willful" encom-

passed actions taken in reckless disregard of a duty as well as actions taken deliberately or intentionally. *Id.*

The official Congressional comments accompanying § 523(a)(6) of the current Bankruptcy Code indicate that Congress intended to statutorily overrule the *Tinker* holding to a certain extent. The House and Senate reports on § 523(a)(6) state:

> [§ 523(a)(6)] excepts debts for willful and malicious injury by the debtor to another person or to the property of another person. Under this paragraph, willful means deliberate or intentional. To the extent that *Tinker v. Colwell* [citation omitted] held that a looser standard is intended, and to the extent that other cases have relied on Tinker to apply a reckless disregard standard, they are overruled.

Sen.Rep. No. 95–989, 95th Cong., 2d Sess. 79 (1978); H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 365 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5865, 6320, 6321 (*quoted in Southgate*, 35 B.R. at 770). These comments clearly demonstrate that in enacting § 523(a)(6), Congress rejected the notion that actions taken in reckless disregard of a duty could constitute "willful" conduct. According to the *Southgate* court, some courts deciding cases under § 523(a)(6) have held that these legislative comments demonstrate a Congressional intent to overrule *Tinker*'s definition of "malicious" as well as *Tinker*'s definition of "willful." *Southgate*, 35 B.R. at 771. As the *Southgate* court correctly pointed out, however, nothing in the legislative comments to § 523(a)(6) suggests that Congress intended to alter *Tinker*'s holding that the term "malicious" encompasses implied or constructive malice as well as actual malice. *Id.*

Policy considerations also indicate that the term "malicious" should encompass implied or constructive malice for purposes of § 523(a)(6). An overly-narrow definition of the term "malicious" under § 523(a)(6) would hinder the policy underlying exceptions to discharge. Requiring proof that a debtor subjectively intended to harm a creditor's interests would impose a nearly

insurmountable burden on a creditor seeking to have a debt declared nondischargeable under § 523(a)(6). Absent an admission from the debtor, a debtor's subjective intent to harm a creditor is virtually impossible to prove. Thus, a definition of "malicious" which limits nondischargeability under § 523(a)(6) to creditors who can prove actual malice on the part of a debtor would substantially limit the applicability of § 523(a)(6) and would permit "malicious wrongdoers" as well as "honest debtors" to benefit from the discharge provisions of the Bankruptcy Code.

Accordingly, this Court holds that a debtor need not subjectively intend to harm a creditor in order to commit a "willful and malicious" act within the meaning of § 523(a)(6). Implied or constructive malice is sufficient to support a finding of nondischargeability under § 523(a)(6).

### B. Collateral estoppel

The doctrine of collateral estoppel provides that a factual issue which has been actually and necessarily litigated and finally determined in a prior lawsuit may not be relitigated in a subsequent lawsuit. *Klingman v. Levinson,* 831 F.2d 1292, 1294 (7th Cir.1987) (*citing Brown v. Felsen,* 442 U.S. 127, 139 n. 10, 99 S.Ct. 2205, 2213 n. 10, 60 L.Ed.2d 767 (1979)). The Seventh Circuit Court of Appeals has held that collateral estoppel should be applied to cases in which a court hearing a non-bankruptcy case has finally determined factual issues relevant to a subsequent dischargeability claim, provided that the non-bankruptcy court used the same standards that a bankruptcy court would have used in determining those issues. *Klingman,* 831 F.2d at 1295.

There are four requirements which must be met before collateral estoppel will preclude relitigation of a factual issue in a subsequent bankruptcy proceeding. First, the issue which is sought to be precluded from relitigation must be the same as the issue involved in the prior proceeding. Second, the issue sought to be precluded must have been actually litigated in the prior proceeding. Third, determina-

tion of the issue must have been essential to the final judgment in the prior proceeding. Finally, the party against whom estoppel is sought must have been fully represented in the prior action. *Klingman,* 831 F.2d at 1295. To determine whether a factual issue was actually and necessarily litigated in a prior proceeding, a court should consider the entire record of the prior proceeding, including the pleadings, the jury instructions, and the verdict. *Matter of Martin,* 130 B.R. 930, 943 (Bankr. N.D.Ill.1991).

### C. *Application of collateral estoppel doctrine to the instant case*

McGuffey argues that he is not collaterally estopped from denying that his judgment debt to Littlefield is a debt for "willful and malicious injury" within the meaning of § 523(a)(6) for two reasons. First, McGuffey claims that the elements necessary for application of the collateral estoppel doctrine have not been fully met in this case. McGuffey concedes that the parties had a full trial in federal district court at which McGuffey was adequately represented. He argues, however, that the issue of whether McGuffey behaved "willfully and maliciously" as defined in § 523(a)(6) of the Bankruptcy Code was not involved in the district court case and was neither actually litigated nor essential to the final judgment in that case.

The first step in determining what issue were actually and necessarily litigated in the district court proceeding is to establish the legal basis on which McGuffey was found liable to Littlefield in the district court. McGuffey correctly notes that the district court jury verdict leaves some uncertainty regarding the grounds on which judgment was entered in Littlefield's favor. Although Littlefield sued McGuffey in district court on four separate legal grounds—federal civil rights law, two provisions of federal fair housing law, and common law intentional infliction of emotional distress—the district court judgment awards Littlefield aggregated damages without specifying whether Littlefield pre-

vailed on all, or on only some, of her legal claims.

■ In spite of its lack of specificity, however, the district court judgment does contain enough information to allow this Court to determine the legal basis for McGuffey's liability to Littlefield, at least in part. Under Illinois common law, punitive damages are not available in actions for intentional infliction of emotional distress. *Littlefield v. Mack*, 954 F.2d 1337 (7th Cir.1992) (*citing Knierim v. Izzo*, 22 Ill.2d 73, 88, 174 N.E.2d 157, 165 (Ill.1961)). The district court accordingly instructed the jury that it could not award punitive damages unless it found in favor of Littlefield on one or more of her federal claims. Jury Instruction, "Racial Discrimination Under Sections 1982, 3604, 3613 and 3617—Compensatory and Punitive Damages." Thus, while the district court judgment may be inconclusive regarding whether Littlefield prevailed on her state common law claim, the fact that the jury awarded Littlefield punitive damages proves conclusively that Littlefield prevailed on at least one of her federal claims.

■ Having found that Littlefield prevailed in the district court on at least one of her federal claims, this Court concludes that the issue of whether McGuffey acted "willfully" was actually and necessarily litigated in the district court proceeding. McGuffey therefore is collaterally estopped from denying that his liability to Littlefield arose from willful conduct within the meaning of § 523(a)(6). As noted above, "willful conduct" under § 523(a)(6) consists of conduct which is "deliberate or intentional." Intentional discrimination was an essential element of each of the three federal claims which Littlefield raised against McGuffey in her district court lawsuit. Thus, in order to find in Littlefield's favor on any one of her federal claims, the district court jury must have determined that McGuffey behaved willfully.

First, Littlefield could not have prevailed on her Section 1982 claim without proving that McGuffey intentionally or willfully discriminated against her because of the race of her daughter and her boyfriend. The United States Supreme Court decision in *General Bldg. Contractors Ass'n, Inc. v. Pennsylvania*, 458 U.S. 375, 102 S.Ct. 3141, 73 L.Ed.2d 835 (1982), has been widely interpreted as holding that a plaintiff must prove "discriminatory intent" or "discriminatory purpose" on the part of a defendant in order to establish a violation of 42 U.S.C. § 1982. *See Phillips v. Hunter Trails Community Ass'n*, 685 F.2d 184, 187 (7th Cir.1982); *South–Suburban Housing Center v. Bd. of Realtors*, 713 F.Supp. 1068, 1089 (N.D.Ill.1988); *Kaplan v. 442 Wellington Cooperative Bldg. Corp.*, 567 F.Supp. 53, 56 (N.D.Ill.1983).

Second, Littlefield's claims under the Fair Housing Act were also based on McGuffey's alleged intent to discriminate against her because of the race of her daughter and her boyfriend. Admittedly, it is possible to establish a violation of the Fair Housing Act without proving discriminatory intent or purpose. Federal courts have recognized two distinct types of Fair Housing Act claims: "discriminatory intent" claims and "disparate impact" claims. *See Phillips*, 685 F.2d at 189–90; *Ass'n of Relatives and Friends of AIDS Patients v. Regulations and Permits Administration*, 740 F.Supp. 95, 103 (D.Puerto Rico 1990); *South–Suburban Housing Center*, 713 F.Supp. at 1079. A "disparate impact" claim challenges a facially neutral policy or action under the Fair Housing Act on the ground that the policy has a discriminatory effect on one or more groups protected under the Act. *Phillips*, 685 F.2d at 189; *South–Suburban Housing Center*, 713 F.Supp. at 1079. A plaintiff raising a "disparate impact" challenge under the Fair Housing Act need not prove conclusively that the defendant's discrimination was intentional or willful. *Phillips*, 685 F.2d at 190.

Littlefield's claims against McGuffey under the Fair Housing Act, however, were not "disparate impact" challenges to a facially neutral policy. They were instead "discriminatory intent" claims based on a discrete real estate transaction in which McGuffey refused to rent to Littlefield for allegedly racial reasons. An essential ele-

ment of a "discriminatory intent" claim under the Fair Housing Act is that the defendant's conduct was motivated, at least in part, by bias against a protected group. *Kaplan,* 567 F.Supp. at 56–57. The district court accordingly instructed the jury that it could not rule in Littlefield's favor on her claims under the Fair Housing Act unless in found that one of the reasons for McGuffey's conduct was the race of Littlefield's daughter or the race of Littlefield's boyfriend. Jury Instruction, "Racial Discrimination in Housing Under 42 U.S.C. 3604"; Jury Instruction, "Interference, Coercion, Intimidation; Enforcement by Civil Action Under 42 U.S.C. §§ 3604 and 3617." Thus, Littlefield could not have prevailed on either of her federal fair housing claims unless the jury was convinced that McGuffey's discrimination against Littlefield was intentional or willful.

■ In addition to determining that McGuffey's conduct was "willful" within the meaning of § 523(a)(6) of the Bankruptcy Code, the district court jury also determined that McGuffey's conduct was "malicious" within the meaning of that statute. As discussed above, this Court holds that an act is "malicious" for purposes of § 523(a)(6) if the act is done with either actual or constructive malice i.e. if the act is done with the intent to harm another, or if the nature of the act is such that it will necessarily harm another. In order to award Littlefield punitive damages, the district court jury must have found that McGuffey's conduct toward Littlefield exhibited either actual or constructive malice. McGuffey is therefore collaterally estopped from denying that his debt to Littlefield arose from "malicious" conduct under § 523(a)(6).

The district court judge instructed the jury that it could award Littlefield punitive damages only if it found that McGuffey's conduct was "maliciously or wantonly or oppressively done." Jury Instruction, "Racial Discrimination Under Sections 1982, 3604, 3613 and 3617—Compensatory and Punitive Damages." The district court defined the terms "maliciously," "wantonly," and "oppressively" for the jury as follows:

An act or failure to act is *maliciously* done if prompted or accompanied by ill will or spite or grudge either toward the injured person individually or toward all persons in one or more groups or categories of which the injured person is a member.

An act or failure to act is *wantonly* done if [done] in reckless or callous disregard of or indifference to the rights of one or more persons including the injured person.

An act or failure to act is *oppressively* done if done in a manner which injures or damages or otherwise violates the rights of another person with unnecessary harshness or severity as by misuse or abuse of authority or power or by taking advantage of some weakness or disability of [sic] the misfortunes of another person.

*Id.* (emphasis added). Under the district court's definitions, "malicious" conduct, "wanton" conduct, and "oppressive" conduct all constitute conduct which is "malicious" for purposes of § 523(a)(6). An act "prompted or accompanied by ill will or spite or grudge," which the district court defined as "malicious" conduct, is an act done with the specific intent to cause harm to another, or actual malice. An act done "in reckless or callous disregard of or indifference to the rights" of another, which the district court defined as "wanton" conduct, is an act done in the face of knowledge that harm to another is likely to result, or an unjustified act which necessarily and predictably harms another, i.e. an act done with constructive malice. Similarly, an act done "with unnecessary harshness or severity," which the district court defined as "oppressive" conduct, is also an unjustified act which necessarily and predictably harms another, or a constructively malicious act.

■ McGuffey argues that this Court cannot use the district court's jury instructions as a basis for finding that the district court judgment has collateral estoppel effect in this case because the language of the jury instructions is not identical to the language used in cases interpreting

§ 523(a)(6) of the Bankruptcy Code. Several courts have relied on the language of jury instructions, however, when deciding whether a judgment will have collateral estoppel effect in a subsequent bankruptcy proceeding to determine nondischargeability under § 523(a)(6). These courts have been willing to accord the prior judgment collateral estoppel effect in the subsequent bankruptcy proceeding, even if the language of the jury instructions in the prior proceeding was not identical to the language used in case law interpreting § 523(a)(6). *See, e.g., In re Caldwell,* 60 B.R. 214 (Bankr.E.D.Tenn.1986); *In re Smith,* 37 B.R. 996 (Bankr.M.D.Tenn.1984).

The facts in *Smith,* for example, are quite similar to the facts in the instant case. In *Smith,* a claimant sought to have the bankruptcy court declare a judgment debt owed by the debtor to the claimant nondischargeable under § 523(a)(6) of the Bankruptcy Code. The claimant also filed a motion for summary judgment on its complaint to determine nondischargeability, arguing that the state court judgment giving rise to the debt collaterally estopped the debtor from denying that the debt was for "willful and malicious injury." The bankruptcy court agreed with the claimant and granted the motion for summary judgment.

In determining that the debtor was collaterally estopped from disputing that the conduct giving rise to the judgment debt was "malicious" for purposes of § 523(a)(6), the bankruptcy court relied on the fact that the state court jury had awarded the claimant punitive damages. The state court judge had instructed the jury that it could award punitive damages only if it found that the debtor had acted "willfully and maliciously under circumstances of rudeness or oppression or in a manner which shows wanton or reckless disregard for the plaintiff's rights." *Id.* at 1000. The bankruptcy court held that either a jury finding that the debtor had behaved "willfully and maliciously under circumstances of rudeness or oppression" or a jury finding that the debtor had behaved "in a manner which shows wanton or reckless disregard for the plaintiff's

rights" was equivalent to a finding that the debtor had behaved "maliciously" within the meaning of § 523(a)(6). *Id.*

McGuffey directs this Court's attention to the cases of *Matter of Martin,* 130 B.R. 930 (Bankr.N.D.Ill.1991), and *Matter of Schwenn,* 44 B.R. 746 (Bankr.E.D.Wis. 1984). In both of these cases, the jury in a prior proceeding had been instructed that it could award punitive damages if it found that the defendant had acted "either maliciously or in a wanton, willful or reckless disregard" for the plaintiff's rights. *Martin,* 130 B.R. at 946–47; *Schwenn,* 44 B.R. at 748. The bankruptcy court in both cases held that a punitive damage award granted under this instruction was not entitled to collateral estoppel effect in a subsequent proceeding to determine nondischargeability under § 523(a)(6).

The decisions in *Martin* and *Schwenn* can be distinguished, however, from the decision in *Smith.* In both *Martin* and *Schwenn,* the claimant argued that the punitive damage award established conclusively that the conduct giving rise to the debtor's liability was *both* willful *and* malicious within the meaning of § 523(a)(6). The *Martin* and *Schwenn* courts noted that the disjunctive nature of the punitive damage instruction allowed the jury to award punitive damages if it found that the debtor's conduct was malicious *or* wanton *or* willful *or* reckless. Thus, under the jury instruction, the jury might have awarded punitive damages based on a finding that the debtor had behaved either willfully *or* maliciously, rather than both willfully *and* maliciously, as required by § 523(a)(6). *Martin,* 130 B.R. at 946–47; *Schwenn,* 44 B.R. at 748. In addition, the instruction allowed the jury to award punitive damages based solely on a finding that the debtor had behaved recklessly. The *Martin* and *Schwenn* courts noted, and the legislative history of § 523(a)(6) confirms, that reckless disregard alone is insufficient to constitute "willful and malicious" conduct under § 523(a)(6). *Martin,* 130 B.R. at 946–47; *Schwenn,* 44 B.R. at 749; *see* Sen.Rep. No. 95–989, 95th Cong., 2d Sess. 79 (1978); H.R.Rep. No. 95–595, 95th

Cong., 1st Sess. 365 (1977) (*quoted in Southgate*, 35 B.R. at 770).

In *Smith*, on the other hand, the bankruptcy court examined the punitive damage jury instruction solely for the purpose of determining whether the jury in the prior proceeding had found the debtor's conduct to be "malicious" within the meaning of § 523(a)(6). *Smith*, 37 B.R. at 999–1000. The bankruptcy court had already decided, based on the language of a different jury instruction, that the jury in the prior proceeding had found the debtor's conduct to be "willful" or intentional. *Smith*, 37 B.R. at 999. "Having first found the debtor's actions to be willful," the *Smith* court asserted, "either additional finding by the jury in the prior action [that the debtor acted "willfully and maliciously under circumstances of rudeness or oppression" *or* that the debtor acted with "wanton or reckless disregard for the plaintiff's rights"] would collaterally estop the debtor from relitigating the '*maliciousness*' element of this § 523(a)(6) action." *Smith*, 37 B.R. at 1000 (emphasis added).

The *Smith* court noted that although the definition of "willfulness" set forth in *Tinker v. Colwell* had been modified by the enactment of § 523(a)(6) of the Bankruptcy Code, the definition of "maliciousness" set forth in that opinion had not been affected by the enactment of the Code. *Smith*, 37 B.R. at 1000 n. 4; *see also* the discussion of *Tinker v. Colwell* and § 523(a)(6) of the Bankruptcy Code, above. As noted above, the legislative history of § 523(a)(6), coupled with the Supreme Court's holding in *Tinker v. Colwell*, 193 U.S. 473, 24 S.Ct. 505, 48 L.Ed. 754 (1904), indicates that an action is "willful" for purposes of § 523(a)(6) only if it is "deliberate or intentional," while an action is "malicious" under § 523(a)(6) if it is motivated either by actual malice or by constructive or implied malice. Thus, while "wanton or reckless disregard" of the rights of another may be insufficient to establish "*willfulness*" within the meaning of § 523(a)(6), the *Smith* court found that "wanton or reckless disregard" of the rights of another *is* encompassed within "the common-law notion of '*malicious*' addressed by the Supreme Court in *Tinker*." *Smith*, 37 B.R. at 1000 n. 4 (emphasis added).

The *Martin* and *Schwenn* opinions therefore are not inconsistent with the *Smith* opinion. The *Martin* and *Schwenn* courts correctly held that conduct which is merely reckless is not sufficient to support nondischargeability under § 523(a)(6). In contrast, the *Smith* court held, also correctly, that conduct which is *both* deliberate or intentional *and* shows a reckless disregard for the rights of others *is* sufficient to support nondischargeability under § 523(a)(6).

The instant case parallels the *Smith* case rather than the *Martin* and *Schwenn* cases. This Court has already determined, based on the elements of the federal claims which Littlefield raised in her district court action, that the district court jury must have found McGuffey's conduct toward Littlefield to have been willful and intentional. This Court therefore is examining the punitive damage jury instruction administered in the district court case solely for the purpose of determining whether the jury could have awarded Littlefield punitive damages without finding that McGuffey's conduct was also "malicious" within the meaning of § 523(a)(6). Admittedly, under the jury instruction administered in the district court, the jury could have awarded Littlefield punitive damages based on a finding that McGuffey acted "in reckless disregard ... of or indifference to the rights of one or more persons." Jury Instructions, "Racial Discrimination Under Sections 1982, 3604, 3613 and 3617—Compensatory and Punitive Damages." As the *Smith* court held, however, such a finding is sufficient to support nondischargeability under § 523(a)(6) when coupled with a finding that McGuffey's conduct was deliberate or intentional.

In summary, the district court judgment in this case meets each of the four requirements for collateral estoppel with respect to the issue of whether McGuffey's liability to Littlefield arose from "willful and malicious" conduct. McGuffey concedes that he was fully represented in the district court proceeding. In addition, the issue of

whether McGuffey's conduct was "willful and malicious" for purposes of § 523(a)(6) was involved in the district court action because intentional discrimination was an element of each of Littlefield's federal claims, and because actual or constructive malice was essential for the awarding of punitive damages. Finally, the fact that Littlefield prevailed on at least one of her federal claims and received an award of punitive damages establishes that the issue of whether McGuffey's conduct was "willful and malicious" was actually and necessarily litigated and determined in Littlefield's favor in the district court. McGuffey therefore is precluded from relitigating the issue of whether his conduct was "willful and malicious" before this Court.

As his second argument in opposition to Littlefield's Motion for Summary Judgment, McGuffey asserts that he is not collaterally estopped from denying that his debt to Littlefield is nondischargeable as a debt for "willful and malicious injury" because the record of the district court proceeding contains no evidence that Littlefield suffered actual damages as a result of McGuffey's conduct. McGuffey notes in particular that the jury made no specific finding regarding the actual damages sustained by Littlefield, and that the jury was instructed that it need not find that McGuffey's conduct caused any physical injury or threat of physical injury to Littlefield or her property. McGuffey's argument is completely without merit.

■■■ Admittedly, McGuffey is correct in contending that a debt may not be declared nondischargeable under § 523(a)(6) unless the debtor's willful and malicious conduct caused some injury to the creditor seeking discharge. McGuffey is incorrect in suggesting, however, that physical injury is required to support a finding of nondischargeability under § 523(a)(6). Case law establishes that § 523(a)(6) imposes no requirement of bodily injury or physical abuse. *See Caldwell*, 60 B.R. at 217 and cases cited therein.

In addition, McGuffey's claim that the record contains no evidence that Littlefield suffered actual damages is preposterous.

By awarding Littlefield $50,000 in compensatory damages on her claims, the district court jury clearly found that McGuffey's conduct *had* caused Littlefield actual injury. The district court instructed the jury that if it found in Littlefield's favor on any of her federal claims, it was to award her "such actual or compensatory damages as you find from a preponderance of the evidence were proximately caused by the acts of the defendants." Jury Instruction, "Racial Discrimination Under Sections 1982, 3604, 3613 and 3617—Compensatory and Punitive Damages." The court further instructed the jury, "If you do not find that plaintiff suffered any actual damages, then you may award her some nominal sum, such as one dollar, as damages." *Id.* Similarly, the jury was instructed:

> If you find in favor of the plaintiff on her claim of intentional infliction of emotional distress, you should award plaintiff such sum as you believe will fairly and justly compensate plaintiff for any damages you believe she sustained and is reasonably certain to sustain in the future as a direct result of the defendants' conduct.

> If you find that she did not suffer any actual damages, then you may award her some nominal sum, such as one dollar, as damages.

Jury Instruction, "Actual Damages for Intentional Infliction of Emotional Distress." An award of $50,000· hardly constitutes nominal damages. The jury therefore must have found that Littlefield suffered actual damages. Furthermore, the Seventh Circuit Court of Appeals upheld the jury's compensatory damage award on review over McGuffey's claim that the award was not supported by the evidence. *Littlefield v. McGuffey*, 954 F.2d 1337, 1348–49 (7th Cir.1992).

Because the question of whether McGuffey's liability to Littlefield arose from "willful and malicious" conduct was conclusively determined in the district court proceeding, there is no genuine issue of material fact in this case regarding whether McGuffey's debt to Littlefield is nondischargeable pursuant to § 523(a)(6) of the Bankruptcy

Code. This Court finds that McGuffey's judgment debt to Littlefield is nondischargeable under § 532(a)(6) as a debt for "willful and malicious injury."

## II. *Amount of Nondischargeability*

The only issue which remains to be settled is the amount of McGuffey's $324,002.36 judgment debt which is nondischargeable under § 523(a)(6). McGuffey argues that only that portion of the judgment which represents actual damages is nondischargeable. He maintains that those portions of the judgment representing attorneys' fees and punitive damages are subject to discharge. Littlefield, on the other hand, asserts that the entire judgment debt, including the amounts representing attorneys' fees and punitive damages, is nondischargeable.

### A. Nondischargeability of punitive damages under § 523(a)(6)

Courts are sharply divided regarding the nondischargeability of punitive damage awards under § 523(a)(6). Some courts have held that if a judgment debt consisting of both actual damages and punitive damages is deemed to have arisen from willful and malicious conduct on the part of the debtor, only the portion of the judgment debt representing actual damages may be held nondischargeable under § 523(a)(6). *See In re Alwan Bros. Co., Inc.*, 105 B.R. 886 (Bankr.C.D.Ill.1989); *In re Rubitschung*, 101 B.R. 28 (Bankr. C.D.Ill.1988); *Matter of Cheatham*, 44 B.R. 4 (Bankr.N.D.Ala.1984); *In re Schmidt*, 36 B.R. 834 (Bankr.D.Minn.1984). Other courts have declared that the entire judgment debt arising from the debtor's willful and malicious conduct, including both compensatory and punitive damages, may be excepted from discharge under § 523(a)(6). *See, e.g., In re Miera*, 926 F.2d 741 (8th Cir.1991); *In re Adams*, 761 F.2d 1422 (9th Cir.1985); *In re Dahlstrom*, 129 B.R. 240 (Bankr.D.Utah 1991); *In re Dvorak*, 118 B.R. 619 (Bankr.N.D.Ill.1990); *In re Guy*, 101 B.R. 961 (Bankr.N.D.Ind.1988); *In re Nix*, 92 B.R. 164 (Bankr.N.D.Tex. 1988).

The courts which have refused to declare punitive damage awards nondischargeable under § 523(a)(6) have advanced a number of reasons for their refusal. Several of these courts focus on the fact that § 523(a)(6) provides an exception to discharge for debts "for willful and malicious *injury*" caused by the debtor to the person or property of another. 11 U.S.C. § 523(a)(6) (emphasis added). These courts assert that discharge under § 523(a)(6) is limited by the extent of the injury resulting from the debtor's willful and malicious conduct. Because punitive damages "are not compensation for injury," but are "imposed to punish a wrongdoer and deter others from committing like offenses in the future," punitive damages "are not a debt for injury caused by a debtor's willful and malicious acts." *Alwan Bros.*, 105 B.R. at 890. Several courts therefore hold that punitive damage awards are not nondischargeable under § 523(a)(6). *Alwan Bros.*, 105 B.R. at 890; *Rubitschung*, 101 B.R. at 28; *Schmidt*, 36 B.R. at 836–37.

In addition, some courts assert that refusing to hold punitive damage awards nondischargeable under § 523(a)(6) is consistent not only with the language of § 523(a)(6), but also with the language of other sections of the Bankruptcy Code. These courts point in particular to § 523(a)(7), which explicitly provides an exception to discharge for punitive damages owed to a governmental unit. Section 523(a)(7) excepts from discharge any debt "to the extent such debt is for a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit, and is *not compensation for actual pecuniary loss.*" 11 U.S.C. § 523(a)(7) (emphasis added). According to some courts, the difference between the language of § 523(a)(6) and the language of § 523(a)(7) indicates that Congress did not intend for punitive damages owed to private litigants, as opposed to governmental units, to be nondischargeable. *See, e.g., Alwan Bros.*, 105 B.R. at 891.

A third basis on which some courts refuse to hold punitive damage awards nondischargeable under § 523(a)(6) is the

"fresh start" policy of the Bankruptcy Code. It is widely accepted that "[t]he paramount purpose of the Bankruptcy Code is to relieve a debtor from oppressive indebtedness and to provide the debtor with a fresh start, while equitably distributing the debtor's assets among creditors." *Alwan Bros.*, 105 B.R. at 891. Exceptions to discharge are narrowly construed in order to advance the Code's "fresh start" policy. Several courts have maintained that excepting punitive damage awards from discharge would contravene the primary purpose behind the Bankruptcy Code. *Id.; Schmidt*, 36 B.R. at 837. The *Alwan Bros.* court asserted that

> [t]he Bankruptcy Court is not a forum for deterring misconduct. A dishonest debtor is penalized under [§ 523(a)(6) ] by not being absolved of his obligation to compensate certain creditors for the harm he has caused. But there is no punishment for punishment's sake in bankruptcy.

*Alwan Bros.*, 105 B.R. at 892 (footnote omitted).[1]

Courts which do permit punitive damage awards to be excepted from discharge under § 523(a)(6) also advance a number of justifications in support of their position. Most of these courts assert that nothing in the language of § 523(a)(6) requires courts to treat compensatory and punitive damages differently under that section. They note that § 523(a)(6) excepts from discharge "*any debt* ... for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6) (emphasis added). They further note that the Bankruptcy Code's definition of the term "debt" is quite broad. The Code defines a "debt" as a "liability on a claim." 11 U.S.C. § 101(12). The term "claim," in turn, is defined as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidat-

ed, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured." 11 U.S.C. § 101(5)(a). In light of these definitions, courts often find that the term "debt" is more than broad enough to encompass punitive damage awards as well as compensatory damage awards for purposes of nondischargeability under § 523(a)(6). *See Dahlstrom*, 129 B.R. at 242 ("Given the plain language of § 523(a)(6), which must be read in conjunction with [the Code's definitions of 'debt' and 'claim'], the court is compelled to conclude that 'debts' held to be nondischargeable under that subsection include punitive damage awards."); *Dvorak*, 118 B.R. at 631 ("Nothing in the wording of the statute or its history would warrant treating liability for punitive damages any differently than liability for compensatory damages, given the breath [sic] of the definition of 'debt.' ").

In fact, a number of courts have suggested that the language of § 523(a)(6) affirmatively favors holding punitive damages nondischargeable when the punitive damages were awarded in connection with a judgment debt arising from willful and malicious conduct. Many courts hold that nondischargeability under § 523(a)(6) turns on the nature of the act giving rise to the debt rather than on the nature of the debt itself. *See Miera*, 926 F.2d at 745 ("The language of § 523(a)(6) is directed at the nature of the conduct which gives rise to the debt rather than the nature of the debt."); *Adams*, 761 F.2d at 1427 ("... the exception to discharge turns upon the nature of the act which gave rise to the liability rather than upon the nature of the liability."). Under this rationale, "[a]ll liabilities resulting [from a willful and malicious act] are nondischargeable" under § 523(a)(6). *Adams*, 761 F.2d at 1428 (*quoting Coen v. Zick*, 458 F.2d 326, 329–

---

**1.** At least one court has held that excepting punitive damage awards from discharge is also inappropriate because it would effectively "punish the innocent unsecured creditors by virtue of a substantial depletion of the estate for a wrong committed by the debtor." *Cheatham,* 44 B.R. at 8. This argument is without merit, for excepting a debt from discharge does not deplete estate assets. When a debt is excepted from discharge under § 523(a)(6) or one of the other provisions of § 523(a), the debtor remains liable on the debt after the completion of the bankruptcy case. The fact that the debt has been excepted from discharge has no effect, however, on the distribution of the estate or its proceeds within the bankruptcy case.

30 (9th Cir.1972)); *see also In re Dean,* 79 B.R. 659, 663 (Bankr.N.D.Tex.1987) ("Where willfulness and malice exist, then compensatory and punitive damages flowing therefrom are nondischargeable under § 523(a)(6).").

Several courts also have concluded that the language and structure of § 523(a) as a whole indicate that Congress *did* intend to allow punitive damages awarded to private litigants to be excepted from discharge under certain circumstances. Some courts note that nothing in the text or history of § 523(a) indicates that Congress intended § 523(a)(7) to preclude non-governmental creditors from seeking to have debts declared nondischargeable under *other* subsections of § 523(a), such as § 523(a)(6). *In re Levy,* 951 F.2d 196, 199 (9th Cir.1991); *Dahlstrom,* 129 B.R. at 246. In addition, some courts have contrasted the language of § 523(a)(6) with the language of § 523(a)(2) to support their conclusion that punitive damage awards may be nondischargeable under § 523(a)(6). *See Dahlstrom,* 129 B.R. at 246–47; *Nix,* 92 B.R. at 170. Section 523(a)(2), which concerns debts obtained by fraud or misrepresentation, provides, in pertinent part, that a debt is excepted from discharge *"to the extent obtained by ...* false pretenses, a false representation, or actual fraud." 11 U.S.C. § 523(a)(2)(A) (emphasis added). Several courts have held that the phrase "to the extent obtained by" in § 523(a)(2) limits nondischargeability under that section to the amount the debtor actually obtained through fraudulent means, and therefore precludes nondischargeability of punitive damages under § 523(a)(2). *See, e.g., In re Ellwanger,* 105 B.R. 551, 555 (9th Cir.BAP 1989); *Matter of Larson,* 79 B.R. 462, 465 (Bankr.W.D.Mo.1987); *Matter of Suter,* 59 B.R. 944, 946–47 (Bankr.N.D.Ill.1986); *In re Record Co., Inc.,* 8 B.R. 57, 60 (Bankr. S:D.Ind.1980). The *Dahlstrom* and *Nix* courts point out that § 523(a)(6) contains no such limiting language. *Dahlstrom* 129 B.R. at 247; *Nix,* 92 B.R. at 170. Those courts therefore hold that both compensatory and punitive damages flowing from a debtor's willful and malicious conduct are nondischargeable under § 523(a)(6).

*Dahlstrom,* 129 B.R. at 247; *Nix,* 92 B.R. at 170.

Furthermore, several courts state that excepting punitive damage awards from discharge under § 523(a)(6) does not contravene the Bankruptcy Code's "fresh start" policy. These courts point out that the "fresh start" provided by the Bankruptcy Code is reserved for the "honest but unfortunate debtor." *Dahlstrom,* 129 B.R. at 245 (*quoting Grogan v. Garner,* 498 U.S. 279, ——, 111 S.Ct. 654, 659, 112 L.Ed.2d 755 (1991)). They therefore conclude that the "fresh start" policy has no application in cases where the debtor has "committed a nondischargeable act that is so grievous that after a full trial on the merits, [a trier of fact] awarded punitive damages." *Guy,* 101 B.R. at 996; *see also Dvorak,* 118 B.R. at 631 (*quoting In re Johnson,* 120 B.R. 461, 469 (Bankr. N.D.Ind.1990)). According to these courts, the very purpose of § 523(a)(6) is to penalize debtors who commit willful and malicious acts. *Dvorak,* 118 B.R. at 631 (*quoting Johnson,* 120 B.R. at 469); *Guy,* 101 B.R. at 996. Thus, the language of § 523(a)(6) is considered to override the Code's "fresh start" policy. *Dahlstrom,* 129 B.R. at 245.

Finally, a few courts have supported the holding that punitive damage awards may be nondischargeable under § 523(a)(6) by referring to the United States Supreme Court case of *Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). *See, e.g., Dahlstrom,* 129 B.R. at 242–43. In *Grogan,* a case arising out of a nondischargeability complaint brought under § 523(a)(2)(A), the Supreme Court held that the standard for proving a claim of nondischargeability under § 523(a) is a "preponderance of the evidence" standard rather than a "clear and convincing evidence" standard. In a footnote to the *Grogan* opinion, the Court stated that the question of whether the portion of a judgment debt in excess of actual damages could be excepted from discharge under § 523(a)(2)(A) was not at issue in the case and therefore would not be considered. The Court noted in *dicta,* however, that the question of non-

dischargeability of punitive damages was probably addressed by § 523(a)(6) rather than § 523(a)(2). The Court stated:

> Arguably, fraud judgments in cases in which the defendant did not obtain money, property, or services from the plaintiffs *and those judgments that include punitive damages awards* are more appropriately governed by § 523(a)(6).

*Grogan*, 498 U.S. at —— n. 2, 111 S.Ct. at 657 n. 2 (emphasis added). According to some lower courts, this language implies that if faced with the question, the Supreme Court would hold that punitive damages may excepted from discharge under § 523(a)(6). *Levy*, 951 F.2d at 199; *Dahlstrom*, 129 B.R. at 242–43.

This Court now holds that when a judgment debt is deemed to have arisen from willful and malicious conduct on the part of a debtor, the entire judgment debt, including both compensatory and punitive damages, is nondischargeable under § 523(a)(6). This Court is persuaded that the language of § 523(a)(6) provides for the nondischargeability of *all debts* arising from a debtor's willful and malicious act which causes injury to the person or property of another. In addition, this Court finds that excepting punitive damages from discharge under § 523(a)(6) is not inconsistent with the Bankruptcy Code's "fresh start" policy because § 523 of the Bankruptcy Code sets forth explicit exceptions to that policy. Finally, this Court does not interpret § 523(a)(7) as providing that only punitive damages owed to governmental units may be excepted from discharge under § 523(a).

### B. Nondischargeability of attorneys' fees under § 523(a)(6)

There is also mixed authority regarding whether court-awarded attorneys' fees are subject to discharge when the judgment debt to which the fees attach is held nondischargeable under one of the provisions of § 523(a).[2] A few cases hold that an award of attorneys' fees is dischargeable in bankruptcy, even if the underlying judgment debt is nondischargeable, unless there is some statutory or contractual authority for exempting the fee award from discharge. *See Cheatham*, 44 B.R. at 4; *In re Beard*, 5 B.C.D. 680 (Bankr.M.D.Tenn.1979). In *Beard*, for example, the bankruptcy court considered whether a judgment debt arising from a federal jury verdict in an odometer fraud case was nondischargeable in bankruptcy under the predecessor to § 523(a)(2) of the Bankruptcy Code, which excepted from discharge "liabilities for obtaining money or property by false pretenses or false representations." *Beard*, 5 B.C.D. at 680 (*quoting* § 17(a)(2) of the Bankruptcy Act). The judgment debt included $1,300 in attorneys' fees which the federal district court had awarded the plaintiff pursuant to the federal statute establishing sanctions for odometer fraud. *Id.* The bankruptcy court held that although the portion of the judgment debt representing the plaintiff's actual damages was nondischargeable in bankruptcy, the attorneys' fee award was not excepted from discharge.

The *Beard* court noted that the essence of an action under § 17(a)(2) of the Bankruptcy Act was the common law tort of misrepresentation or fraud. The court asserted that the nondischargeability of the debtor's judgment debt therefore was not based on the fact that the debtor had violated the federal odometer fraud statute, but instead was based on the fact that in violating that statute, the debtor had committed the elements of common-law fraud. *Id.* at 682 ("The odometer fraud statute did not amend the Bankruptcy Act. The basis for relief under § 17(a)(2) remains un-

---

**2.** Some of the most common exceptions to discharge are found in §§ 523(a)(2), 523(a)(4), and 523(a)(6) of the Bankruptcy Code. As noted above, § 523(a)(2) excepts from discharge debts obtained by "false pretenses, a false representation, or actual fraud" or by use of a statement which materially misrepresents the debtor's financial condition. 11 U.S.C. § 523(a)(2). Section 523(a)(4) excepts from discharge a debt for "fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." 11 U.S.C. § 523(a)(4). In analyzing the dischargeability or nondischargeability of attorneys' fees awarded in connection with a judgment debt which has been held nondischargeable under § 523(a), courts rarely, if ever, draw distinctions based on whether the judgment debt was found nondischargeable under § 523(a)(2), (a)(4), or (a)(6).

changed."). The court went on to note that attorneys' fees are not available to a prevailing plaintiff in a common-law fraud action. The court therefore concluded that the district court's attorneys' fee award was dischargeable. *Id.* The court in *Cheatham* applied similar reasoning in an action for nondischargeability under § 523(a)(2) of the current Bankruptcy Code. *See Cheatham,* 44 B.R. at 8.

The majority of courts hold, however, that if a judgment debt is found to be nondischargeable under § 523(a) of the Bankruptcy Code, any attorneys' fees awarded in the judgment are also nondischargeable. Some courts favor the nondischargeability of attorneys' fees because they believe the fees are part of the actual damages suffered by the creditor as a result of the wrongful conduct which gave rise to the debt's nondischargeability. *See, e.g., In re Kwiat,* 62 B.R. 818, 823 (Bankr. D.Mass.1986) ("Although there may be an argument against exempting attorney fees from discharge, it [sic] is an actual damage incurred by the plaintiff from the defendant's actions."). Other courts simply hold that a fee award which is attached to a judgment debt deemed nondischargeable under § 523(a) is likewise nondischargeable because the fee award arises from the same conduct as the primary debt. *See, e.g., In re Orrick,* 51 B.R. 92, 96 (Bankr. N.D.Okla.1985) (attorneys' fees awarded in a court judgment are "a direct consequence" of the suit leading to the judgment and may be excepted from discharge under § 523(a)(6) if the underlying judgment is also excepted from discharge under that section). *See also In re Harper,* 117 B.R. 306, 313–14 (Bankr.N.D.Ohio 1990); *In re Christian,* 111 B.R. 118, 122 (Bankr. W.D.Tex.1989).

■ The Seventh Circuit Court of Appeals apparently has sided with the courts which hold that attorneys' fees awarded in connection with a judgment debt found to be nondischargeable under § 523(a) are likewise nondischargeable. In *Klingman v. Levinson,* the Seventh Circuit affirmed a district court holding that court-awarded attorneys' fees were nondischargeable un-

der § 523(a)(4) of the Bankruptcy Code because the judgment to which the fee award attached was found to be nondischargeable under that section. *Klingman v. Levinson,* 831 F.2d at 1296–97. According to the *Klingman* court, "[a]ncillary obligations such as attorneys' fees and interest may attach to the primary debt; consequently, their status depends on that of the primary debt." *Klingman,* 831 F.2d at 1296 (*citing In re Hunter,* 771 F.2d 1126, 1131 (8th Cir.1985)).

Although the *Klingman* case involved a complaint for nondischargeability brought under § 523(a)(4), there is nothing in the *Klingman* opinion to suggest that the court's holding on the dischargeability of attorneys' fees is restricted to that section of the Code. Accordingly, in light of the *Klingman* opinion, and in light of the fact that the judgment debt at issue in this case is found to be nondischargeable under § 523(a)(6) of the Bankruptcy Code, this Court holds that the attorneys' fees awarded by the federal district court in connection with the primary judgment are also nondischargeable under § 523(a)(6).

In summary, this Court finds that the entire judgment debt which McGuffey owes to Littlefield, including those portions of the judgment which represent punitive damages and attorneys' fees, are nondischargeable pursuant to § 523(a)(6) of the Bankruptcy Code. An appropriate order will follow.